KASOLD, Chief Judge:
Margreit Castellano, surviving spouse of veteran Frederick C. Castellano, appeals through counsel that part of a July 7, 2009, decision of the Board of Veterans’ Appeals (Board) that denied entitlement to (1) service connection for bipolar disorder, (2) service connection for Alzheimer’s disease, (3) special monthly compensation (SMC) pursuant to 38 U.S.C. § 1114(s), and (4) a total disability rating based on individual unemployability (TDIU). Mrs. Castellano contends that the Board erred (1) in finding that a June 26, 2000, VA medical report and private nursing home records were not to be considered evidence in Mr. Castellano’s claims file at the date of his death, (2) by not considering her arguments on remand, as evidenced by the Board’s reissuing, in large part, the same statement of reasons or bases issued in a previous Board decision that had been remanded by the Court, and (3) in denying *149 her claims. The Secretary disputes these arguments.
For the reasons stated herein, we hold that (1) at the time Mrs. Castellano filed her claim, the Secretary authorized, inter alia, “[r]eports of hospitalization, treatment or examinations authorized by VA” to be deemed included in the file at the date of the veteran’s death “even if such reports are not reduced to writing or are not physically placed in file until after death,” VA Adjudication Procedures Manual M21-1 (M21-1), pt. VI, para. 5.06(c) (May 8, 2000), (2) this deemed inclusion was a substantive right that could not be eliminated except in accordance with law, (3) this substantive right was not eliminated properly until after Mrs. Castellano filed her claim and that change did not operate retroactively, and (4) Mrs. Castellano was entitled to the benefit of this right. We also hold, inter alia, that— although the Board is not per se prohibited from relying on many of the same reasons or bases supporting a previous Board decision that addressed the same matters but had been remanded for further adjudication — a Board decision on appeal nevertheless must stand on its own statement of reasons or bases (whether reiterating what had been stated in a previous Board decision or not) and otherwise adequately address the issues raised below. Given these holdings and based on the record on appeal and applicable law, that part of the Board decision on appeal will be set aside and the matters remanded for further adjudication consistent with this decision.
I. FACTS
Mr. Castellano served on active duty from April 1943 to October 1944. In October 1944, he was granted service connection for his mental condition, labeled at that time as “psychoneurosis.” Record (R.) at 4196. Over time, Mr. Castellano’s condition was labeled variously, including “personality disorder,” “post-traumatic stress disorder” (PTSD), “mixed depression and anxiety with psychotic symptoms,” “bipolar disorder,” and “anxiety reaction.” In the 1990s, Mr. Castellano also was diagnosed with Alzheimer’s disease (also referred to in the record as “dementia” [1]). On May 18, 2000, Mr. Castellano died. At the time of his death, he had pending adjudication an increased-rating claim for anxiety reaction (the regional office’s (RO’s) label for the psychoneurosis condition) and a claim for disability compensation for Alzheimer’s disease, SMC, TDIU, and a psychiatric disorder other than anxiety reaction.
Mrs. Castellano filed an accrued benefits claim on June 29, 2000. Her claim was denied in a September 2005 Board decision, but Mrs. Castellano appealed. Pursuant to a joint motion for remand (JMR), her claim was remanded for further adjudication of all matters except entitlement to accrued benefits for her husband’s claim for increased benefits for service-connected anxiety reaction, which Mrs. Castellano explicitly abandoned. Her claim was denied again in a December 2007 Board decision, but subsequently remanded by the Court pursuant to another JMR. The 2009 Board decision here on appeal, inter alia, (1) found that a June 26, 2000, VA medical report of treatment or examination was prepared after Mr. Castellano’s death and therefore could not be deemed in his file at the date of his death, (2) noted that private nursing home records also could not be considered in his file at the date of his *150 death, and (3) maintained its denial of benefits for bipolar disorder, Alzheimer’s disease, SMC and TDIU, reiterating many of the same reasons or bases supporting the December 2007 Board decision that had been remanded for further adjudication. This appeal followed.
II. PARTIES’ARGUMENTS
On appeal, Mrs. Castellano argues that the June 26, 2000, VA medical opinion and private nursing home records should have been deemed by the Board to be in Mr. Castellano’s claims file at the date of his death, pursuant to provisions in the 1992 M21-1 that she asserts were declared substantive law by Hayes v. Brown, 4 Vet.App. 353, 360 (1993). She also argues that the 2009 Board decision on appeal (1) failed to address her arguments on remand and reprinted its statement of reasons or bases from a previous decision, therefore violating its Stegall duty to readjudicate the matters remanded, see Stegall v. West, 11 Vet.App. 268, 271 (1998), (2) erred in not applying the benefit of the doubt and finding Mr. Castellano’s Alzheimer’s disease not aggravated by his service-connected anxiety disorder, (3) erred in not applying the benefit of the doubt and finding that Mr. Castellano had no bipolar disorder, and (4) erred in denying SMC and TDIU, which are inextricably intertwined with the other matters.
The Secretary contends that the M21-1 provisions relied on by Mrs. Castellano were revised on May 8, 2000, prior to her claim, and that she therefore was not entitled to the application of the prior version. Moreover, he argues that the Board plausibly determined that the June 26, 2000, VA medical opinion was prepared after Mr. Castellano’s death, and therefore was not constructively in the file at the date of his death. As to Mrs. Castellano’s other issues, the Secretary argues that (1) Mrs. Castellano has failed to demonstrate the relevancy of the private nursing home records, (2) the Board substantially complied with its remand duties under Stegall, and (3) the Board plausibly rendered findings on Alzheimer’s disease, bipolar disorder, SMC, and TDIU.
III. DISCUSSION
A. Evidence in the File at Date of Death
As discussed below, we agree with Mrs. Castellano that (1) at the time of her claim, the Secretary authorized certain documents to be deemed in the file at the date of the veteran’s death, and (2) she is entitled to the benefit of that authorization.

1. APA and the M21-1 Generally

The Administrative Procedure Act (APA) mandates that Federal agencies publish their substantive rules, and amendments thereof, in the Federal Register, to provide notice to affected citizens and the opportunity to comment. See 5 U.S.C. §§ 552, 553; Morton v. Ruiz, 415 U.S. 199, 232, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) (APA provides that “administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished ad hoc determinations”). Although it was VA policy to comply voluntarily with the APA since 1972, VA was not otherwise required by law to comply with the APA until the Veterans’ Judicial Review Act (VJRA) became effective in September 1, 1989. Compare Administrative Procedure Act, Pub.L. No. 89-554 (1966) (excluding matters relating to “benefits” from the APA), with Veterans’ Judicial Review Act, Pub.L. No. 100-687 (1988) (subjecting VA to the APA); see also 38 C.F.R. § 1.12 (1972) (“It is the policy of the Department of Veterans Affairs to afford the public general notice, published in the Federal *151 Register, of proposed regulatory development, and an opportunity to participate in the regulatory development in accordance with the provisions of the Administrative Procedure Act (APA). All written comments received will be available for public inspection.”). Thus, until passage of the VJRA, VA rules and regulations lived in “splendid isolation,” generally unconstrained by judicial review. Brown v. Gardner, 513 U.S. 115, 122, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); see Pub.L. 100-687 (permitting judicial review by this Court and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit)).
Given this unique history, it is not a surprise that substantive rules promulgated before the APA might be contained in the M21-1 or a directive, letter, or other document. See Buzinski v. Brown, 6 Vet.App. 360, 369 (1994) (noting that Rank v. Nimmo, 677 F.2d 692, 698 (9th Cir.1982), held that “VA handbooks, circulars, and manuals” may have the “force and effect of law” if they prescribe substantive rules); Fugere v. Derwinski, 1 Vet.App. 103, 107 (1990) (the placement of a rule “in a procedural manual cannot disguise its true nature as a substantive rule”), aff'd, 972 F.2d 331 (Fed.Cir.1992).
Moreover, substantive rules promulgated prior to the statutory requirement that VA comply with the APA remain binding on the Secretary until they properly are revoked or amended. See Fugere, 1 Vet.App. at 110 (noting that a substantive rule may not be rescinded until the Secretary has “ ‘published notice of his intention to rescind it, invited comment, put that comment ... on the public record, and published a reasoned and reviewable explanation of his decision to rescind [it].’ ” (quoting Nat’l Wildlife Fed’n v. Watt, 571 F.Supp. 1145, 1156 (D.D.C. 1983))). This is consistent with procedural regularity and basic fair play required in adjudicating veterans’ claims. See Thurber v. Brown, 5 Vet.App. 119, 123 (1993) (holding that veterans in particular are entitled to “procedural regularity and basic fair play” in the adjudication of their claims); Fugere, 1 Vet.App. at 108 (“ ‘Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.’ ” (quoting Morton, 415 U.S. at 235, 94 S.Ct. 1055)).[2]
Of course, it is now clear that a properly promulgated regulation trumps an M21-1 provision or other VA directive that plainly is erroneous or inconsistent with regulation. Compare Smith v. Shin *152 selci, 647 F.3d 1380, 1385 (Fed.Cir.2011) (“VA interpretations of its own regulations in its Adjudication Procedures Manual [M21-1] are ‘controlling’ as long as they are not ‘plainly erroneous or inconsistent with the regulation.’ ” (citing Thun v. Shinseki, 572 F.3d 1366, 1369 (Fed.Cir.2009) (quoting Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)))), Haas, 525 F.3d at 1197 (holding that an M21-1 inconsistent with regulation confers no rights on claimant), and Fournier, 23 Vet.App. at 487-88 (discussing Haas), with Cohen v. Brown, 10 Vet.App. 128,139 (1997) (“Where the Manual M21-1 and the regulation overlap, the Manual M21-1 is irrelevant .... except where the Manual M21-1 is more favorable to the claimant.”).

2. Applicable Substantive Law

a. VA-Authorized Reports of Treatment

At the time Mrs. Castellano filed her claim for accrued benefits on June 29, 2000, the law generally restricted the evidence that could be considered when adjudicating an accrued benefits claim to that which was “in the [veteran’s] file at date of death.” 38 U.S.C. § 5121. Exercising his authority to promulgate rules appropriate to carrying out the law, however, the Secretary authorized “[r]eports of hospitalization, treatment or examinations authorized by VA” [hereinafter “VA-authorized reports of treatment”] to be deemed in the file at date of death “even if such reports are not reduced to writing or are not physically placed in file until after death.”[3] M21-1, pt. VI, para. 5.25(a) (Sept. 21, 1992). This authorization dates back to at least 1985, before mandatory compliance with the APA. See M21-1, para. 56.24
(Sept. 5, 1985) (“Evidence ‘in file’ will be interpreted to include the following even if such reports are not reduced to writing or are not physically placed in file until after death: ... Reports of hospitalization, treatment or examinations authorized by the VA.”).
In Hayes, this Court (1) recognized some confusion with the full scope of section 5121 as it related to evidence in the file at date of death, and (2) noted that “the Secretary has wide latitude in establishing departmental policy as to what post-date-of-death evidence may be considered.” 4 Vet.App. at 360; see also Hyatt v. Shinseki, 566 F.3d 1364, 1370 (Fed.Cir.2009) (noting that the decision in Hayes, supra, rested on a “perceived conflict between subsections (a) and (c) of § 5121,” but that the perceived conflict was resolved with an amended regulation promulgated in November 2002). The Court also discussed regulatory § 3.1000(d)(4) and noted that this section applied “only to evidence in the file at date of death and the death certificate and, does not, by its terms, contemplate the submission of any other post-death evidence.” 4 Vet.App. at 358-59. The Court concluded that, “[t]o the extent that the[] Manual provisions affect what post-date-of-death evidence may be considered, they have the force of law as they affect a substantive right.” 4 Vet.App. at 360 (quoting Fugere, 1 Vet.App. at 107) (internal quotation marks omitted). The Court also noted that the Secretary might consider clarifying his policy with regard to what evidence submitted after death could be considered when adjudicating an accrued benefits claim.
*153 Although the M21-1 was changed on May 8, 2000 (prior to the date Mrs. Castellano filed her claim), the changes made with regard to VA-authorized reports of treatment being deemed included in the file at date of death were cosmetic, such that notice and comment were not required. See Fugere, 1 Vet.App. at 110.[4] As illustrated below, this language was moved to paragraph 5.06(c), with only a redundant phrase being removed. Specifically, the phrase “reports of treatment or examinations in VA medical centers including those in outpatient treatment folders,” was removed; it was redundant with the language authorizing VA reports of treatment or examination to be deemed included in the file at the date of death. Compare M21-1, pt. VI, para. 5.25(a) (Sept. 21, 1992) (emphasis added), to wit:
a. Evidence in File at Date of Death. Evidence ‘in file’ includes the following, even if such reports are not reduced to writing or are not physically placed in file until after death: (1) Service department records; (2) Reports of VA hospitalization; (3) Reports of treatment or examinations in VA medical center including those in outpatient treatment folders; (4) Reports of hospitalization, treatment, or examinations authorized
by VA[;] and (5) Reports of autopsy made by VA on the date of death,
with M21-1, pt. VI, para. 5.06(c) (May 8, 2000), to wit:
c. Evidence in File at Date of Death.... Evidence ‘in file’ includes the following, even if such reports are not reduced to writing or are not physically placed in file until after death: (1) Service department records; (2) Reports of VA hospitalization; (3) Reports of hospitalization, treatment, or examinations authorized by VA; and (4) Reports of autopsy made by VA on the date of death.
Accordingly, at the time Mrs. Castellano filed her claim, (1) the Secretary deemed VA-authorized reports of treatment to be included in Mr. Castellano’s claims file at the date of his death, (2) this deemed inclusion was a substantive rule promulgated prior to the APA and pursuant to the Secretary’s statutory authority to promulgate rules, and (3) Mrs. Castellano was entitled to the benefit of this substantive rule.
b. Evidence Identifying, Verifying, or Corroborating the Death Certificate[5]
In contrast to the May 2000 cosmetic changes made to paragraph 5.25(a) *154 of the 1992 M21-1, paragraph 5.25(b) of the 1992 M21-1 underwent substantive change. Specifically, paragraph 5.25(b) was altered by narrowing the type of evidence accepted from that which corroborated any evidence in the file to that which corroborated the death certificate. Compare M21-1, pt. VI, para. 5.25(b) (Sept. 21, 1992) (emphasis added), to wit:
b. Evidence Essentially Complete. The provisions of 38 CFR 3.1000(d)(4) ... provide for the acceptance of evidence after death for verifying or corroborating evidence ‘in file’ at death,
with M21-1, pt. VI, para. 5.06(d) (May 8, 2000) (emphasis added), to wit:
c. Evidence Essentially Complete. The provisions of 38 CFR 3.1000(d)(4) ... provide[s] for acceptance of evidence (including uncertified statements) when considered in connection with the identifying, verifying, or corroborative effect of the death certificate.
Although this was a substantive change, we note that — in contrast to paragraph 5.25(a), which makes no reference to a regulation or otherwise purports to be interpreting a regulation, see 67 Fed.Reg. 9,638 (Mar. 4, 2002) (proposed rule to amend § 3.1000(d)(4)) (noting that regulations prior “do not define the term ‘evidence in the file’ ”) — paragraph 5.25(b) explicitly purported to be implementing regulatory § 3.1000(d)(4), as did its successor provision of the M21-1, paragraph 5.06(d). Significantly, on its face, paragraph 5.25(b) plainly was inconsistent with § 3.1000(d)(4), which provided only for the acceptance of evidence for “identifying, verifying, or corroborative effect of the death certificate ” (emphasis added), since at least 1972. Thus, the changes made in 2000 actually brought the language of paragraph 5.25(b) into conformance with regulatory § 3.1000(d)(4), the regulation that it explicitly purported to be implementing.
Also of significance, the Court in Hayes never explicitly found the provisions of paragraph 5.25(b) to be substantive; rather, as noted above, the Court generally held that “[t]o the extent that these Manual provisions affect what post-date-of-death evidence may be considered, they have the force of law as they affect a substantive right.” 4 Vet.App. at 360 (quoting Fugere, 1 Vet.App. at 107) (internal quotation marks omitted). Although the Court noted that paragraph 5.25(b) cited regulatory § 3.1000(d)(4), it never addressed whether paragraph 5.25(b) of the M21-1 could stand in direct contravention of the very regulation on which it purportedly rested.
Moreover, to the extent there may have been any understanding at the time Hayes issued that the M21-1 could trump a regulation that it purports to explain, it has been clarified that a properly promulgated regulation trumps an M21-1 provision or other VA directive that plainly is erroneous or inconsistent with regulation. See Smith, Haas, and Fournier, all supra.[6]
*155 As such, we conclude that Mrs. Castellano cannot rely on paragraph 5.25(b) of the 1992 M21-1 because it (1) plainly was inconsistent with the regulation that it purported to explain and (2) it was modified to comport with the regulation at the time she filed her claim. Therefore, paragraph 5.06(d) of the May 8, 2000, M21-1, not paragraph 5.25(b) of the 1992 M21-1, applies to Mrs. Castellano’s claim.

3. The Board’s Application of the Substantive Law

a. June 2000 VA Medical Report

In the decision on appeal, the Board found that the June 2000 VA medical report was not requested until after Mr. Castellano’s death, was not prepared until after Mr. Castellano’s death, and therefore could not be considered in the adjudication of Mrs. Castellano’s accrued benefits claim. In its discussion, the Board referenced both paragraph 5.06(c) of the May 8, 2000, M21-1, as well as the current version of 38 C.F.R. § 3.1000(d)(4) (2011), which was not in effect at the time Mrs. Castellano filed her claim.

(1) Application of Paragraph 5.06(c) of the May 8, 2000, M21-1

In its application of paragraph 5.06(c), the Board clearly erred in finding that the June 2000 VA medical report did not constitute a VA-authorized report of treatment deemed included in the file at the date of death. See Butts v. Brown, 5 Vet.App. 532, 534 (1993) (en banc) (Court reviews findings of fact under the “clearly erroneous” standard); Gilbert v. Derwinski, 1 Vet.App. 49, 52 (1990) (“ ‘A finding is “clearly erroneous” when ... the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948))). There is no dispute on appeal that this report was authorized by VA; indeed, this was conceded at oral argument. It also is undisputed that the report reflects the VA doctor’s treatment and examination assessment of the disabilities from which Mr. Castellano suffered before he died, and provides an opinion of the etiology of his disabilities, such that it constitutes a report of treatment.
Although the Board found that the report was both requested and prepared after death, nothing in paragraph 5.06(c) (or its predecessor, paragraph 5.25(b) of the 1992 M21-1) supports a conclusion that such factors are a basis for excluding the report from being deemed in the file at date of death. At the time of Mrs. Castellano’s claim, paragraph 5.06(c)’s sole requirements for the document to be deemed included in the file at date of death were that the document was (1) a report of treatment, (2) authorized by the VA, and (3) reduced to writing. The provision did not mandate that the report be requested or prepared before death.
Moreover, although the Secretary argues that a doctor’s unrecorded thoughts on the date of a veteran’s death cannot constitute a report in the file at date of death, the Secretary’s argument is a red herring. The substantive law at the time Mrs. Castellano filed her claim did not address a doctor’s unrecorded thoughts and the state of a potential report at the time of death. Rather, the substantive law *156 permitted a VA-authorized report of treatment — no matter what form it took at the moment of the veteran’s death — to be deemed included in the file once reduced to writing after death.[7] This is the case here with the June 2000 report of treatment, which, although not recorded until after the death of Mr. Castellano, was authorized by the Secretary to be written, and therefore authorized by the Secretary to be deemed in the file at the date of Mr. Castellano’s death.

(2) Application of § 3.1000(d)(1) (2011)

In rendering its decision, the Board also applied § 3.1000(d)(4) (2011).[8] This application was in error, however, because the regulation was not intended to be retroactive and its retroactive application has an impermissible retroactive effect. See 38 U.S.C. § 7261(a)(3) (Court shall hold unlawful conclusions of Board “not in accordance with law”). The current version of § 3.1000(d)(4) was promulgated on November 27, 2002 — more than two years after Mrs. Castellano filed her claim — and limits evidence in the file at date of death to that which was in VA’s possession, to wit:
Evidence in the file at date of death means evidence in VA’s possession on or before the date of the beneficiary’s death, even if such evidence was not physically located in the VA claims folder on or before the date of death.
Although there is no dispute that this regulation applies to all claims filed after November 27, 2002, see Hyatt, supra, applying the amended version of a regulation to an already pending claim is not “favored in the law” unless the Secretary expressly intends it to govern pending or prior claims, Rodriguez v. Peake, 511 F.3d 1147, 1152 (Fed.Cir.2008) (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 246, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)); see Princess Cruises, Inc. v. United States, 397 F.3d 1358, 1362 (Fed.Cir.2005) (“ ‘[Congressional enactments and administrative rules will not be construed to have retroactive effect unless them language requires this result.’ ” (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988))); Ervin v. Shinseki, 24 Vet.App. 318, 323 (2011) (applying amended regula *157 tion to pending claim when Secretary’s express intent was clear).
With regard to any intention by the Secretary to apply this amendment retroactively to claims pending at the time the regulation was promulgated, none is evident in the promulgating documents or elsewhere, see 67 Fed.Reg. 9,638 (Mar. 4, 2002) (proposed rule to amend § 3.1000(d)(4) and remove provisions of VA Manual M21-1 inconsistent with amended § 3.1000(d)(4)); Evidence for Accrued Benefits, 67 Fed.Reg. 65,707 (Oct. 28, 2002) (final rule amending 38 C.F.R. § 3.1000(d)(4) and noting no comments submitted during notice-and-comment period), and the Secretary makes no such argument on appeal.
To determine whether a regulation has an impermissible retroactive effect, we look to (1) the nature and extent of the change of the law, (2) the degree of connection between the operation of the new rule and a relevant past event, and (3) familiar considerations of fair notice, reasonable reliance, and settled expectations. Rodriguez, 511 F.3d at 1153 (citing Princess Cruises, 397 F.3d at 1362-63). Moreover, in the context of veterans claims and benefits, our analysis is guided by the dictates of fair process. See Thurber, 5 Vet.App. at 123.
Evaluating the Princess Cruises factors, we conclude that applying amended regulatory § 3.1000(d)(4) in this instance has an impermissible retroactive effect. First, the extent of the change in the law is significant. As discussed above, previous to November 27, 2002, the substantive law regarding evidence in the file at date of death permitted VA-authorized reports of treatment reduced to writing after death nevertheless to be deemed included in the file at date of death. This entitlement was eliminated by the 2002 amendment to § 3.1000(d)(4) (2002), limiting the evidence deemed included in the file at date of death to that which was in VA’s possession at date of death. Apparent on its face, and as recognized by the Secretary when promulgating the regulation in 2002, the amendment effected a change in a longstanding policy, rather than explain or clarify an already existing policy. See 67 Fed.Reg. 65,707 (indicating that amended § 3.1000(d)(4) is a divergence from previous VA policy toward evidence in the file at date of death). This amendment was more than a clarification; it was a substantive and significant change that limited evidence that previously could have been considered when adjudicating an accrued benefits claim. Compare Princess Cruises, 397 F.3d at 1365 (finding that a “strong and unprecedented” evidentiary presumption previously not found in statute or regulation constitutes a significant change in law), with Rodriguez, 511 F.3d at 1154 (noting that clarification of an already existing policy does not constitute substantial change in the law).
Second, the amended regulation is connected to a relevant past event. In addressing this element in Princess Cruises, the Federal Circuit noted that a recent U.S. Customs and Border Protection ruling created an evidentiary presumption that could only be overcome by data that had not been — and could no longer be— collected by the cruise line; thus, the presumption could not be overcome in that instance and was connected to a relevant past event. 397 F.3d at 1360-66. Here, Mrs. Castellano filed her claim and obtained the VA-authorized report when VA reports of treatment recorded after death still could be deemed in the file at date of death — prior to the regulation change in 2002. Similar to the situation in Princess Cruises, in Mrs. Castellano’s case, an amended regulation created an evidentiary rule that cannot be overcome, because *158 Mrs. Castellano cannot return to the time before her husband’s death and submit the report to the Secretary, as the amended regulation now requires. In other words, had she known about a future rule change that would be applied retroactively to exclude evidence obtained after her husband’s death, she and her husband could have acted differently by obtaining the report before her husband’s death. See Tarver v. Shinseki, 557 F.3d 1371, 1375 (Fed.Cir.2009) (addressing whether claimant would have acted differently had she known about the rule change).
Moreover, the change in law particularly is relevant to a past event — the collection of evidence before Mr. Castellano’s death (or lack thereof) — because the Secretary (who amended the regulation) bears partial responsibility in collecting relevant evidence pursuant to the duty to assist. Indeed, it would exceed the bounds of fairness due a veteran to permit the Board’s retroactive enforcement of an evidentiary standard that excludes certain evidence from consideration when the Secretary did not declare the regulation change to be retroactive when it was promulgated, and the Secretary otherwise did not timely collect the evidence necessary to surmount the retroactive evidentiary standard. Ultimately, because the evidence can no longer be collected in a way that would surmount the retroactive evidentiary standard, that collection opportunity is a relevant past event connected to the amended regulation. See id. (taking into account “equitable considerations such as the posture of the case and the extent to which the parties have relied to their prejudice on the superseded rule” in evaluating whether there is a connection to a relevant past event).
We further note the stark difference between the facts in this case and the facts in Rodriguez, 511 F.3d at 1156, that led the Federal Circuit in that case to permit retroactive application of a change in regulation. In Rodriguez, when considering whether the change in regulation was connected to a relevant past event, the Federal Circuit explicitly noted that Mrs. Rodriguez had filed her claim prior to the caselaw that interpreted a statute in a manner favorable to Mrs. Rodriguez, such that Mrs. Rodriguez had not relied on the favorable interpretation when she filed her claim. Id. at 1155 (“Rodriguez did not rely to her detriment on the prior state of the law.”). In that circumstance, the change in regulation reversing the effect of that caselaw was not related to a past event. Id. Here, as noted, Mrs. Castellano filed her claim and obtained the report when she was entitled by substantive law to have VA-authorized reports deemed included in the file at date of death. It is only the possible retroactive effect of later change in regulation that might preclude consideration of this report in adjudicating Mrs. Castellano’s claim.
Third, considering fair notice, reasonable reliance, and settled expectations, the Secretary posited one policy toward evidence in the file at the date of death from at least 1985 to 2002, and this Court found it to be substantive law. See Tarver, 557 F.3d at 1376 (examining Secretary’s historic practice in evaluating settled expectations). Mrs. Castellano reasonably relied on that law in gathering evidence for her claim and, after the Secretary first provided notice of a significantly different law on March 4, 2002, see 67 Fed.Reg. 9638, well after Mrs. Castellano filed her claim, there was nothing further she could do to have her evidence admitted. See Princess Cruises, 397 F.3d at 1366 (“[T]he imposition of an evidentiary [rule] that cannot possibly be met strongly implicates fairness considerations.”). The Secretary’s consistent past practice is unlike the situation in Rodriguez, 511 F.3d at 1156, where *159 a claimant could not have settled expectations of a law because it had undergone “multiple changes.” 511 F.3d at 1156.
Accordingly, to the extent the Board rejected consideration of the June 2000 VA medical report based on the application of amended § 3.1000(d)(4), such application had an impermissibly retroactive effect. Overall, remand is warranted for the Board to consider this report in the adjudication of Mrs. Castellano’s claim for accrued benefits. See Tucker v. West, 11 Vet.App. 369, 374 (1998) (remand is appropriate “where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate”); Webster v. Derwinski, 1 Vet.App. 155, 159 (1991) (Court is not to conduct de novo factfinding but rather to remand the matter for the Board to find facts in the first instance).

b. Private Nursing Home Records

The Board found that the private nursing home records postdated the period of care authorized by VA, and Mrs. Castellano does not demonstrate — nor does the record of proceedings reflect — clear error in that finding. See Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc) (appellant has burden of demonstrating error); Butts and Gilbert, both supra. Accordingly, these records postdating VA-authorized care could not be deemed in the file at date of death under paragraph 5.06(c) of the May 8, 2000, M21-1.
As to whether the records might be admissible under paragraph 5.06(d) of the May 8, 2000, M21-1 because they identify, verify, or corroborate the death certificate, the Secretary generally notes that Mrs. Castellano fails to establish the relevance of these records to her claim. However, the Board failed to address whether these records could be considered under subsection (d) and, in light of the need to remand
for consideration of the June 2000 VA medical report and pursuant to the general rule that a claimant may submit new argument and evidence on remand, Mrs. Castellano will have an opportunity on remand to establish the relevancy of these private records. If so presented, the Board must discuss the issue. See Kay v. Principi, 16 Vet.App. 529, 534 (2002) (on remand, Board must consider any additional evidence and argument that the claimant presents in support of the matters remanded).
B. Stegall and Substantial Compliance on Remand
Mrs. Castellano also contends that the July 2009 Board violated its Stegall duty to readjudicate her claim when it last was remanded by the Court pursuant to a JMR. See Stegall, 11 Vet.App. at 271 (“[A] remand by this Court to the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders.”). More specifically, she argues that the reasons or bases in the July 2009 Board decision improperly replicated the reasons or bases of the December 2007 Board decision, which was vacated entirely by the December 2008 Court order pursuant to JMR.
As we consistently have stated, the Board’s duty upon remand is to consider any additional evidence and argument that the claimant presents on remand. Kay, supra. This duty applies to all matters remanded, regardless of whether they were the explicit bases for the remand. Moreover, the Board’s duty on remand is not tied to whether the Board decision on appeal was set aside or vacated by the Court. See Leopoldo v. Brown, 4 Vet.App. 216, 219 (1993) (remanding without vacating or setting aside Board decision, and noting that “appellant is free ... to offer additional evidence” on remand); Ohland *160 v. Derwinski, 1 Vet.App. 147, 150 (1991) (remanding without vacating or setting aside the Board decision); Sammarco v. Derwinski, 1 Vet.App. 111, 114 (1991) (same).
Although it is best practice for the Board explicitly to note and specifically respond to each additional argument raised on remand, the Board sufficiently meets its duty under Kay when it adequately addresses the issues raised. See D’Aries v. Peake, 22 Vet.App. 97, 105 (2008) (substantial compliance, not strict compliance, is required under Stegall); Dyment v. West, 18 Vet.App. 141, 146-47 (1999) (finding substantial compliance with remand order where, although examiner failed to presume exposure to asbestos, he “ultimately ma[d]e a determination as to whether asbestos contributed to [the claimant’s] disability”); see also 38 U.S.C. § 7104(d)(1) (Board must adequately address “all material issues of fact and law presented on the record” (emphasis added)). Compare Black’s Law Dictionary 907 (9th ed. 2009) [hereinafter Black’s] (defining “issue” as a “question of law or fact” or both), with Black’s at 121 (defining “argument” as a “statement that attempts to persuade”). Further, if a claimant presents no new arguments on a remanded matter or merely recycles old arguments, there is no requirement that the Board employ different words to restate its decision. Rather, if the Board reconsiders the evidence and decides to reinstate its previous determination on a matter, it may replicate the language it employed previously.
Here, as Mrs. Castellano notes, the July 2009 Board newly addressed the issue of the June 26, 2000, VA doctor’s letter and whether it could be deemed in the file at date of death pursuant to § 3.1000(d)(4) (2011), but the July 2009 Board decision on appeal otherwise largely replicated the reasons or bases in the December 2007 Board decision. Mrs. Castellano also correctly notes that she submitted additional written argument on the matters remanded that was not specifically addressed by the July 2009 Board in its statement. Although the Board did not specifically address much of the written argument she submitted, the written argument is contained in the record and the Board is presumed to have considered it. See Newhouse v. Nicholson, 497 F.3d 1298, 1302 (Fed.Cir.2007) (absent specific evidence indicating otherwise, there is a presumption that the Board considers all evidence of record). Moreover, although the July 2009 Board largely recycled the statement of the 2007 Board, the statement nevertheless addresses the very issues that Mrs. Castellano addressed in her additional written argument.
Thus, for example, Mrs. Castellano argues that the 2009 Board did not address her argument that more probative weight should be granted to the VA chief psychiatrist’s April 1999 opinion because of the doctor’s status as chief psychiatrist and personal physician. Although the 2009 Board did not respond specifically as to the value of the doctor’s status in its probative weight analysis, the Board addressed the probative value of the opinion vis-a-vis the other medical opinions and provided an adequate statement of reasons or bases for its assignment of weight to various opinions, which reflects an adequate discussion of the issue raised by Mrs. Castellano. See Owens v. Brown, 7 Vet.App. 429, 433 (1995) (“It is not error for the [Board] to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons [or] bases.”); see also Allday v. Brown, 7 Vet.App. 517, 527 (1995) (Board’s statement “must be adequate to enable a claimant to understand *161 the precise basis for the Board’s decision, as well as to facilitate review in this Court”). In sum, Mrs. Castellano fails to show by specific evidence that the Board did not consider her written arguments, and fails to demonstrate that the Board’s statement of reasons or bases is not understandable or in some way frustrates judicial review. See Newhouse, Hilkert and Allday, all supra.
C. Alzheimer’s Disease
Mrs. Castellano further argues that the Board erred in finding Mr. Castellano’s Alzheimer’s disease not aggravated by his service-connected anxiety disorder. In support of its decision, the Board noted, inter alia, that (1) a February 1996 medical report stated that Mr. Castellano’s Alzheimer’s brought out his psychiatric symptoms, but did not state that his psychiatric symptoms brought out his Alzheimer’s, (2) an April 1996 medical report stated that Mr. Castellano’s neuroses complicated his organic (personality) disorder and treatment, but did not state that the neuroses complicated Alzheimer’s, (8) an April 1999 medical report stated that Mr. Castellano’s psychiatric problems impacted his Alzheimer’s, but such a statement was inconsistent with the earlier statement of the examiner in April 1996, and (4) a December 1999 medical report stated that anxiety does not cause Alzheimer’s, and, although it also stated that anxiety can contribute to impaired functioning in individuals with Alzheimer’s, “can” also implies “can not.” However, because the June 26, 2000, medical report may alter the Board’s determination on this issue, remand is warranted. See Ameson v. Shinseki, 24 Vet.App. 379, 389 (2011) (remand warranted where error could have altered Board’s determinations).
D. Bipolar Disorder
Mrs. Castellano further argues that the Board erred in finding that Mr. Castellano had no bipolar disorder. Succinctly stated, remand is warranted for the Board to consider the June 26, 2000, medical report in its determination as to whether service connection for bipolar disorder or a higher rating for Mr. Castellano’s mental condition is warranted. See Ameson, supra.
E. SMC and TDIU
Because they are inextricably intertwined with the remanded matters, the issues of SMC and TDIU also will be remanded. Cf. Tyrues v. Shinseki, 23 Vet.App. 166, 178-79 (2009) (remand generally appropriate when matter on appeal is “inextricably intertwined” with matters being adjudicated below), aff'd, 631 F.3d 1380 (Fed.Cir.2011), vacated on other grounds, -U.S. -, 132 S.Ct. 75, 181 L.Ed.2d 2 (2011).
F. Remand
On remand, Mrs. Castellano may present, and the Board must consider, any additional argument in support of the matters remanded. See Kay, supra. These matters are to be provided expeditious treatment on remand in accordance with 38 U.S.C. § 7112.
IV. CONCLUSION
That part of the July 7, 2009, Board decision on appeal is SET ASIDE and the matters are REMANDED for further adjudication consistent with this opinion.
SCHOELEN, Judge, filed a concurring opinion.

. "Alzheimer disease (dementia)” is defined as “a general loss of cognitive abilities, including impairment of memory, as well as ... disturbed planning, organizing, and abstract thinking abilities.” Dorland's Illustrated Medical Dictionary 57, 492 (31st ed. 2007).

. We also have held that substantive procedural provisions favorable to a veteran and contained outside the Code of Federal Regulations are binding on the Secretary even if promulgated after VA was required by law to comply with the APA. See McCormick v. Gob-er, 14 Vet.App. 39, 49 (2000) (requiring the Secretary to request copies of SMRs and VA medical records pursuant to the substantive "VBA Letter Immediate Development provisions” from 1999); Patton v. West, 12 Vet.App. 272, 282 (1999) (stating that the Board "cannot ignore provisions of the Manual M21-1 ... that are favorable to a veteran” and applying an altered substantive manual provision from 1997). These holdings similarly stem from the fair process notion that the Secretary must adhere to his own policies when adjudicating veterans’ claims. See Morton, 415 U.S. at 235, 94 S.Ct. 1055 ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.”); Thurber, supra; but see Guerra v. Shinseki, 642 F.3d 1046, 1050-51 (Fed.Cir.2011) (acknowledging Secretary's position that the M21-1 is primarily " 'an internal manual used to convey guidance to VA adjudicators [and] not intended to establish substantive rules beyond those contained in statutes and regulations.’ " (quoting 72 Fed.Reg. 66,218 (Nov. 27, 2007))); Haas v. Peake, 525 F.3d 1168, 1197 (Fed.Cir.2008) (same); Fournier v. Shinseki, 23 Vet.App. 480, 487-88 (2010) (same).

. This provision also authorized service department records, reports of VA hospitalization, reports of treatment or examinations in VA medical centers including those in outpatient treatment folders, and reports of autopsy made by VA on the date of death to be deemed included in the file at date of death. M21-1, pt. VI, para. 5.25(a) (Sept. 21, 1992).

. The Secretary ultimately promulgated a regulation that limited the evidence that could be included in the file at date of death to documents already in VA's possession, but he did not do this until November 27, 2002, well after Mrs. Castellano submitted her claim. See Evidence for Accrued Benefits, 67 Fed. Reg. 65,707 (Oct. 28, 2002); see also section III.A.3, infra.

. Although our concurring colleague questions the propriety and necessity of our addressing paragraph 5.25(b) of the 1992 M21-1 and its successor paragraph 5.06(d) of the 2000 M21-1 in this case, we note that Mrs. Castellano raised the applicability of these provisions by arguing that the postdeath evidence she submitted should be considered under paragraph 5.25(b) of the 1992 M21-1. See Appellant's Brief at 11-12 (noting that the doctor’s report serves to "corroborate and verify information in [Mr. Castellano’s] file at the date of his death,” citing Hayes’s discussion of paragraph 5.25(b), and arguing that the nursing home records should also be considered part of the file). Moreover, this discussion illuminates the correct substantive law to be applied in further proceedings, given that, as we note infra at section III.A.3.b, Mrs. Castellano may present on remand evidence and argument in support of her position that the nursing home records should be considered in her claim pursuant to paragraph 5.06(d).

. Our concurring colleague takes issue with our interpretation of Smith, Haas, and Fournier. However, Smith states clearly that "VA interpretations of its own regulations in its Adjudication Procedures Manual [M21-1] are ‘controlling’ as long as they are not 'plainly erroneous or inconsistent with the regulation,' ” 647 F.3d at 1385, and paragraph 5.25(b) clearly is an interpretation of regulation that plainly is inconsistent with that regulation. Similarly, in Haas, the Federal Circuit held that an M21-1 provision inconsistent with a regulation did "not confer any rights” on Mr. Haas because the Secretary's regulation was clear. 525 F.3d at at 1197; see also Fournier, 23 Vet.App. at 487 ("[Haas'] indicated that when the Agency's interpretation of a statute is clear from existing regulations, any discrepancy between M21-1 and the regulations 'does not confer any rights' on a claimant.”). Here, § 3.1000(d)(4) clearly provided for accepting *155 evidence for the “corroborative effect of the death certificate,” and paragraph 5.25(b) plainly was inconsistent with that language. Moreover, although our concurring colleague attempts to distinguish Haas by noting that the change in regulation in Haas postdated the M21-1 provision, Haas emphasized the regulation’s clarity, not the regulation’s date, as the key component in finding the M21-1 provision not binding. See 525 F.3d at 1197.

. Our concurring colleague argues that this “holding appears to permit a VA report of treatment, that is requested and written many years after a veteran’s death, to be deemed evidence in the file at the date of death.” Post at 166. Our holding, however, simply restates what the Secretary authorized in paragraph 5.25(a) of the 1992 M21-1 (and its cosmetically changed version, paragraph 5.06(c) of the 2000 M21-1), to wit: if he authorizes VA to prepare a post-date-of-death medical report, it will be deemed in the file at the date of death. We further note that as of November 27, 2002, the Secretaiy promulgated a regulation limiting the evidence deemed in the file at the date of death to that "in VA's possession on or before the date of the beneficiary's death" (38 C.F.R. s 3.1000(d)(4) (2002); see 67 Fed.Reg. 65,707 (Oct. 28, 2002)), such that VA reports requested or written after death are no longer deemed part of die file on the date of death for accrued benefits claims.

. Although our concurring colleague states that our analysis of the retroactive application of § 3.1000(d)(4) (2011) is unnecessary because “the Secretary has not maintained that the regulation applies retroactively,” Post at 168, we note that he also has not maintained that it is not retroactive. Further, our review is of Board decisions, and the Board applied the regulation retroactively and considered it as a basis for not deeming the submitted evidence in the file at date of death (see R. at 11 (concluding that the “psychiatrist’s report was not 'in VA’s possession on or before the date of the beneficiary’s death’ ” (quoting § 3.1000(d)(4) (2011)))). See 38 U.S.C. § 7252; see abo 38 U.S.C. § 7261(a)(3) (Court shall hold unlawful conclusions of Board "not in accordance with law”).