Citation Nr: 1714098 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 07-26 983 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for a right knee disorder, to include as secondary to service-connected left knee tendinitis.

2. Entitlement to service connection for a low back disorder.

3. Entitlement to service connection for migraine headaches.

4. Entitlement to service connection for hypertension, to include as secondary to service-connected posttraumatic stress disorder (PTSD) with depression.

5. Entitlement to an increased rating for left knee tendinitis, currently evaluated as 10 percent disabling.

6. Entitlement to an increased rating for cervical spine degenerative changes, currently evaluated as 10 percent disabling.

7. Entitlement to a total disability evaluation based on individual unemployability due to service-connected disabilities (TDIU).
REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

K. Osegueda, Counsel


INTRODUCTION

The Veteran had active service from March 1997 to March 2001.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas, and a September 2011 rating decision of the VA RO in Muskogee, Oklahoma.

In June 2010, the Veteran testified at a hearing before a Decision Review Officer (DRO) at the RO. In September 2013, the Veteran and his wife testified at a videoconference hearing before the undersigned Veterans Law Judge. Transcripts of the hearings have been associated with the record.

In March 2014 and June 2016, the Board remanded the case for further development. The case has since been returned to the Board for appellate review.

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

The Board finds that additional medical opinions are needed regarding the claims for service connection for a right knee disorder, a low back disorder, migraine headaches, and hypertension. In this regard, the Board notes that, pursuant to the June 2016 remand directives, the Veteran was provided VA examinations in connection with these issues in October 2016. However, the VA examiner's opinions were not fully responsive to the remand directives. 

The United States Court of Appeals for Veterans Claims (Court) has held that "a remand by this Court or the Board confers on the veteran or other claimant, as a matter of law, a right to compliance with the remand orders." Stegall v. West, 11 Vet. App. 268, 271 (1998). As such, compliance with the terms of the remand is necessary prior to further appellate review, and if not, "the Board itself errs in failing to ensure compliance." Id. Therefore, in an effort to comply with the previous remands, the Board finds that a remand is necessary to obtain a clarifying opinion as to the nature and etiology of any right knee disorder, low back disorder, migraine headaches, and hypertension that may be present.

In addition, pursuant to the June 2016 remand directives, the Veteran was afforded VA spine and knee examinations in October 2016 to ascertain the current severity and manifestations of his service-connected left knee tendinitis and cervical spine degenerative changes. However, in light of a recent decision issued by the United States Court of Appeals for Veterans Claims (Court), a remand is required. Specifically, the Court held that 38 C.F.R. § 4.59 requires VA examinations to include joint testing for pain on both active and passive range of motion, as well as with weight-bearing and nonweight-bearing. Correia v. McDonald, 25 Vet. App. 158 (2016). In this case, the VA examination reports did not include these findings.

Although the Board regrets the delay, it is necessary to ensure that the VA examination complies with the requirements of the recent holding in Correia. The examiner should also determine whether it is possible to provide a retrospective medical opinion for the other VA examinations conducted during appeal period. See Chotta v. Peake, 22 Vet. App. 80 (2008) (when there is an absence of medical evidence during a certain period of time, a retroactive medical evaluation may be warranted). Therefore, on remand, the Veteran should be afforded additional VA examinations to ascertain the severity and manifestations of his service-connected left knee and cervical spine disabilities.

The Board further finds that the issue of entitlement to TDIU is inextricably intertwined with the other issues being remanded.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The AOJ should request that the Veteran provide the names and addresses of any and all health care providers who have provided treatment for his left knee, cervical spine, right knee, low back, blood pressure, and migraine headaches. After acquiring this information and obtaining any necessary authorization, the AOJ should obtain and associate these records with the claims file. 

The AOJ should also obtain any outstanding, relevant VA medical records.

2. After the above development has been completed, the Veteran should be afforded a VA examination to determine the nature and etiology of any right knee disorder that may be present. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions.

The Veteran has contended that he has a current right knee disorder that was caused by him compensating for his service-connected left knee tendinitis. Alternatively, he has claimed that his current right knee disorder was caused by in-service football injuries.

The examiner should note that the Veteran is competent to attest to factual matters of which he had first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should also note that the Veteran's service treatment records show that he was treated for complaints of right knee pain, diagnosed as possible tendonitis and LCL strain in September 1999.

The examiner should identify all current right knee disorders. In so doing, he or she should consider the post-service medical records documenting complaints of right knee pain. 

For each diagnosis identified, the examiner should provide an opinion as to whether it is at least as likely as not that the disorder manifested in or is otherwise related to service, to include as a result of in-service football injuries. 

In rendering this opinion, the examiner should discuss how such a disorder generally presents or develops. He or she should also address the significance, if any, of the gap in time between the Veteran's military service and post-service complaints and treatment.

The examiner should also opine as to whether it is at least as likely as not that any current right knee disorder was either caused or permanently aggravated by his service-connected left knee tendinitis. 

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a certain conclusion is so evenly divided that it is medically sound to find in favor of such a conclusion as it is to find against it.)

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review. 

3. After the above development has been completed, the Veteran should be afforded a VA examination to determine the nature and etiology of any low back disorder that may be present. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions.

The Veteran has contended that his current low back pain was caused by injuries from a March 1999 motor vehicle accident during service.

The examiner should note that the Veteran is competent to attest to factual matters of which he had first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should also note that the Veteran's service treatment records show that he was treated for contusions and a ligamentous back strain in a March 1999 emergency room note from the Naval Hospital at Camp Pendleton following a roll-over motor vehicle accident. Thereafter, in a July 1999 service treatment record, the Veteran was diagnosed with a lumbar sprain or strain. During his January 2001 separation examination, he reported having chronic, intermittent musculoskeletal low back pain since the 1999 accident.

The examiner should identify all current low back disorders. In so doing, he or she should consider the private chiropractors records noting diagnoses of a thoracic or lumbar sprain or strain, sacroilitis, sciatica, and thoracolumbar myotitis. If any previously diagnosed disorders are not found on examination, the examiner should address whether they were misdiagnosed or have resolved.

For each diagnosis identified, the examiner should provide an opinion as to whether it is at least as likely as not that the disorder manifested in or is otherwise related to service, to include as a March 1999 motor vehicle accident. 

In rendering this opinion, the examiner should discuss how such a disorder generally presents or develops. He or she should also address the significance, if any, of the gap in time between the Veteran's military service and post-service complaints and treatment.

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a certain conclusion is so evenly divided that it is medically sound to find in favor of such a conclusion as it is to find against it.)

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review. 

4. After the above development has been completed, the Veteran should be afforded a VA examination to determine the nature and etiology of any hypertension that may be present. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions.

The Veteran has contended that he had high blood pressure during service. Alternatively, he has claimed that his hypertension may have been caused or aggravated by his service-connected PTSD with depression, service-connected left knee disability, or medications to treat the pain from his service-connected disabilities. 

The examiner should note that the Veteran is competent to attest to factual matters of which he had first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should also note that the Veteran's service treatment records include a complaint of high blood pressure in February 2000. In addition, the examiner should comment on the blood pressure reading recorded in the August 2006 VA spine examination of 153/96 and the VA spine examiner's note that he informed the Veteran that he needed a primary care evaluation for his elevated blood pressure. (A previous VA examination report indicated that the Veteran did not have hypertension, but did not address these facts).

The examiner should state whether it is at least as likely as not that the Veteran currently has hypertension that manifested in service or within one year thereafter or that is otherwise causally or etiologically related to his military service, including any symptomatology therein. 

The examiner should also opine whether it is at least as likely as not that any current hypertension is either caused by or aggravated by the Veteran's service-connected PTSD with depression, service-connected left knee disability, an/or the medications to treat the pain from his service-connected disabilities. 
 
(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of a certain conclusion as it is to find against it.) 

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history [,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

5. After the above development has been completed, the Veteran should be afforded a VA examination to ascertain the nature and etiology of any migraine headaches that may be present. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file, including the Veteran's service treatment records, post-service medical records, and assertions.

The Veteran has contended that his current migraine headaches were caused by in-service head trauma from boxing and football or from a March 1999 motor vehicle accident.

The examiner should note that the Veteran is competent to attest to factual matters of which he had first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should also note that the Veteran's service treatment records show that he was treated for complaints of migraine headaches in May 2000. In addition, a December 1997 emergency room note indicated that the Veteran was jumped by a group of men in Oceanside, California.

The examiner should provide an opinion as to whether it is at least as likely as not that the Veteran has migraine headaches that manifested in or are otherwise related to his military service, to include as a result of head trauma from in-service boxing and football injuries; a December 1997 assault in Oceanside, California; and a March 1999 motor vehicle accident.

In rendering this opinion, the examiner should discuss how such a disorder generally presents or develops. He or she should also address the significance, if any, of the gap in time between the Veteran's military service and post-service complaints and treatment.

(The term "at least as likely as not" does not mean within the realm of medical possibility, but rather that the medical evidence both for and against a certain conclusion is so evenly divided that it is medically sound to find in favor of such a conclusion as it is to find against it.)

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

6. After completing the foregoing development, the Veteran should be afforded a VA examination to ascertain the severity and manifestations of his service-connected left knee disability. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file.

The examiner should note that the Veteran is competent to attest to factual matters of which he has first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should report all signs and symptoms necessary for rating the left knee disability under the rating criteria. In particular, the examiner should provide the range of motion in degrees of the right and left knees. In so doing, the examiner should test the Veteran's range of motion in active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain so in the report.

The examiner should also indicate whether there is any ankylosis; dislocated semilunar cartilage with frequent episodes of locking, pain, and effusion into the joint; or the symptomatic removal of semilunar cartilage. He or she should also address whether the Veteran has recurrent subluxation or lateral instability, and if so, comment as to whether such symptomatology is slight, moderate, or severe. The examiner should further state whether the Veteran has any impairment of the tibia and fibula.

The presence of objective evidence of pain, excess fatigability, incoordination and weakness should also be noted, as should any additional disability (including additional limitation of motion) due to these factors. 

Further, the VA examiner should comment as to whether range of motion measurements for active motion, passive motion, weight-bearing, and/or nonweight-bearing can be estimated for the other VA examinations conducted during the appeal period. See, e.g., August 2014 and October 2016 VA examination reports. If the examiner is unable to provide a retrospective opinion as to these specific range of motion findings, he or she should clearly explain so in the report.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

7. After completing the foregoing development, the Veteran should be afforded a VA examination to ascertain the severity and manifestations of his service-connected cervical spine disability. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. 

The examiner is requested to review all pertinent records associated with the claims file.

The examiner should note that the Veteran is competent to attest to factual matters of which he has first-hand knowledge, including observable symptomatology. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner should report all signs and symptoms necessary for rating the cervical spine disability under the rating criteria. In particular, the examiner should provide the range of motion in degrees of the cervical spine. In so doing, the examiner should test the Veteran's range of motion in active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain so in the report.

The examiner should also comment on whether there is any form of ankylosis. In addition, the examiner should state the total duration of incapacitating episodes over the past 12 months and identify all neurological manifestations of the disability.

The examiner should specifically address the Veteran's reports that a bone spur in his neck is either affecting a nerve and/or cutting off circulation and causes him to pass out when he turns his head to the side to look over his right shoulder.

The presence of objective evidence of pain, excess fatigability, incoordination and weakness should also be noted, as should any additional disability (including additional limitation of motion) due to these factors. 

Further, the VA examiner should comment as to whether range of motion measurements for active motion, passive motion, weight-bearing, and/or nonweight-bearing can be estimated for the other VA examination conducted during the appeal period. See, e.g., August 2014 and October 2016 VA examination reports. If the examiner is unable to provide a retrospective opinion as to these specific range of motion findings, he or she should clearly explain so in the report.

A clear rationale for all opinions would be helpful and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. Because it is important "that each disability be viewed in relation to its history[,]" 38 C.F.R. § 4.1, copies of all pertinent records in the appellant's claims file, or in the alternative, the claims file, must be made available to the examiner for review.

8. The AOJ should review the examination reports to ensure that they are compliance with this remand. If a report is deficient in any manner, the AOJ should implement corrective procedures. 

9. After completing the above actions and any other development as may be indicated as a consequence of the actions taken in the preceding paragraphs, the case should be reviewed by the AOJ on the basis of additional evidence received since the claims were last readjudicated. 

If any benefit sought is not granted, the Veteran and his representative should be furnished a supplemental statement of the case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).