Oscar G. FUGERE, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 89–72.

United States Court of Veterans Appeals.

Argued Aug. 29, 1990.

Decided Dec. 27, 1990.

Ronald L. Smith, Washington, D.C., for appellant.

Deborah W. Duckett, with whom Raoul L. Carroll, Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before KRAMER, FARLEY and IVERS, Associate Judges.

FARLEY, Associate Judge:

The issue before the Court is whether the Department of Veterans Affairs (VA) was required by the Administrative Procedure Act (APA) and its own policies and regulations to give notice of and an opportunity to comment on the deletion of paragraph 50.13(b) of its Adjudication Procedure Manual, M21–1. The Court concludes that paragraph 50.13(b) was substantive in nature and affected the rights of the appellant. In rescinding the manual provision without complying with rulemaking procedures, the VA acted "without observance of procedure required by law." 38 U.S.C. § 4061(a)(3)(D) (1988). The rescission is set aside and the matter is remanded pursuant to 38 U.S.C. § 4052(a) (1988) with a direction that appellant's original rating be reinstated.

## I.

Appellant seeks review of a decision of the Board of Veterans' Appeals (BVA). This Court's jurisdiction is thus premised upon 38 U.S.C. § 4052 (1988). In addition, appellant argues that paragraph 50.13(b) of the Department of Veterans Affairs' Adjudication Procedure Manual, M21–1, was changed to his detriment in violation of 5 U.S.C. §§ 552(a)(1) and 553 (1988) of the APA because he was not given notice and an opportunity to comment. This Court has jurisdiction to resolve this issue pursuant to 38 U.S.C. § 223(c) (1988) which provides in pertinent part:

An action of the [Secretary] to which section 552(a)(1) or 553 of title 5 (or both) refers ... is subject to judicial review.... [I]f such review is sought in connection with an appeal brought under the provisions of chapter 72 of this title [Veterans' Judicial Review Act], the provisions of that chapter shall apply....

## II.

On November 18, 1987, new criteria for rating defective hearing were established by the VA and published in the Federal Register. Despite the adoption of new rating criteria and testing methods, veterans were to be protected against a decrease in benefits if there had not been any change in the veteran's condition or disability. Paragraph 50.13(b) of the Department's Adjudication Procedure Manual, M21–1 (hereinafter manual), specifically provided the following direction to adjudicators: "Changed Criteria. If the decrease in evaluation is due to changed criteria or testing methods, rather than a change in disability, apply the old criteria and make no reduction." Veteran Oscar G. Fugere, appellant herein, saw active military service during World War II and was receiving benefits for a disability rating of twenty percent for service connected bilateral defective hearing from November 1955 to July 1974. After July 1974, he had a disability rating of thirty percent.

On August 25, 1988, the veteran underwent a VA examination for a hearing aid. On August 31, 1988, he reopened his claim on the ground that additional hearing loss was found to exist by the hearing aid examination. On November 8, 1988, the veteran was again examined by the VA because of his reopened claim. Under the new criteria, and but for the protection of paragraph 50.13(b), the veteran's condition would have resulted in a lower disability rating.

However, unbeknownst to the community of veterans in general and this veteran in particular, the VA Chief Benefits Director rescinded the protective manual paragraph by an internal memorandum to the Regional Office Directors dated No-

vember 23, 1988. In doing so, the Chief Benefits Director recognized that veterans had relied upon the protection afforded by paragraph 50.13(b):

> Through various modes of communication the veteran population has been advised that the recent change in the rating schedule for hearing loss would not result in reduction of disability evaluations. Because that advice has been held to be erroneous, the VA must now take steps to insure that as few veterans as possible are disadvantaged because of their reliance on that advice.

Br. of Appellant at Appendix B.

The Regional Office Directors were instructed to implement the new policy as follows: 1) before scheduling an examination, a veteran must be informed of the possibility of a decrease in rating; 2) if an examination was scheduled but not yet conducted, a veteran was to be informed of the possibility of a decrease in rating and given the opportunity to withdraw the claim; and 3) if an examination had already taken place, no notice would be given to the veteran and the new rating criteria would be applied "regardless of the advice previously provided to the veteran." *Id.*

Appellant was in the third (no notice, new rating) category of the November 23, 1988, memorandum. His examination had taken place two weeks earlier and he was neither informed of the change in the manual nor given the opportunity to withdraw his claim. In a rating decision dated December 5, 1988, the veteran was found to be entitled only to a ten percent disability rating based upon the new criteria. The reduction in benefits was effective on March 1, 1989. (The veteran's rating could not be reduced below twenty percent because he had been rated at that level or higher for over twenty years; *see* 38 C.F.R. § 3.951 (1989).)

The veteran appealed the rating decision to the BVA which affirmed in a decision dated August 15, 1989. A timely appeal to this Court was filed. Following the submission of briefs, oral argument was held on August 29, 1990, and in an opinion filed on October 16, 1990, this panel reversed the BVA decision. Subsequently, on October 30, 1990, the Secretary filed a motion for a review of the panel decision by the Court sitting *en banc*. In a supporting memorandum, the Secretary raised new arguments for the *en banc* Court's consideration which had not been raised before the panel.

■ Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation. *Cf. Flanagan v. United States,* 465 U.S. 259, 263–64, 104 S.Ct. 1051, 1053–54, 79 L.Ed.2d 288 (1984); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373–74, 101 S.Ct. 669, 672–74, 66 L.Ed.2d 571 (1981) (the finality doctrine requires that all errors made at the trial court level be included in a single appeal). Belated arguments ordinarily would not be addressed by the original panel, particularly when *en banc* review rather than reconsideration by the deciding panel is sought. However, this panel determined that it would be more appropriate, at least in this case, to give due consideration to the positions belatedly raised by the Secretary. Accordingly, by an order dated November 20, 1990, the deciding panel vacated its original opinion; this opinion is issued in its stead.

### III.

In his brief, and again at oral argument, the veteran invited this Court to invoke the doctrine of equitable estoppel under the authority of the decision of the Supreme Court in *Office of Personnel Management v. Richmond,* —— U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). We decline appellant's invitation.

The facts in *Richmond* may be simply stated. In order to remain entitled to receive a disability annuity, a claimant could not have earnings in excess of a limit imposed by statute. Mr. Richmond, acting in reliance upon erroneous oral and written advice from a federal employee, earned income in excess of the statutory limit and lost his disability payments for six months. His appeal to the Merit Systems Protection

Board was unsuccessful but a divided panel of the United States Court of Appeals for the Federal Circuit reversed on the ground that the doctrine of equitable estoppel prevented the government from denying the disability payments due to the erroneous advice it had given to Richmond.

The Supreme Court, with Justice Kennedy writing for the majority, declined to issue a definitive rule on the applicability of the doctrine of equitable estoppel to the government but reversed on an alternative ground: "We hold that payments of money from the Federal Treasury are limited to those authorized by statute, and we reverse the contrary holding of the Court of Appeals." *Richmond*, 110 S.Ct. at 2467.

Relying upon the discussion of the doctrine of equitable estoppel in *Richmond*, rather than upon the actual holding of the case, the veteran urged this Court to rule that the VA is estopped from lowering his disability rating because he and his representative relied upon the protective provisions of paragraph 50.13(b) in effect when he reopened his claim. As appellant correctly notes, the Supreme Court in *Richmond* expressly refused to enter a blanket rule that equitable estoppel will never lie against the Government. However, the converse is true as well: the Supreme Court also refused to hold that the doctrine of equitable estoppel could be applied to the government. Indeed, Justice Kennedy took specific note of the fact that the Supreme Court has yet to find that the doctrine of equitable estoppel applied against the Government in a single case. "In sum, courts of appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed." *Id.* at 2470.

Under these circumstances, we decline appellant's invitation to disturb this body of jurisprudence. As in *Richmond*, "[a] narrower ground of decision is sufficient to address the type of suit presented here...." *Id.* at 2471. In this instance, the "narrower ground" is the VA's failure

to comply with the notice and opportunity requirements of the APA.

In a submission of supplemental authority after the briefs were filed and prior to oral argument, the Secretary filed a copy of *Richmond* with the Court and expressed the view that it was "dispositive of any allegation relating to equitable estoppel." (Supp. Memorandum (June 18, 1990).) In the memorandum in support of the motion for *en banc* review, the Secretary argued that the original panel decision paid only lip service to *Richmond* while actually invoking the doctrine of equitable estoppel. The Secretary confuses the holding of the Court with the basis for that holding. As will be discussed in Part IV, the rescission of paragraph 50.13(b) is being set aside because the VA failed to provide the notice and opportunity to comment required by 5 U.S.C. §§ 552(a)(1), 553 and 38 C.F.R. §§ 1.12 and 1.551(c) (1989). The doctrine of equitable estoppel has no bearing upon or application to the decision in this case.

## IV.

The veteran argues that the VA was compelled by its own regulations, 38 C.F.R. §§ 1.12 and 1.551(c) (1989), to comply with the APA, specifically 5 U.S.C. §§ 552(a)(1) and 553, by providing notice and an opportunity to comment before it rescinded manual paragraph 50.13(b) and that it failed to do so. The VA does not disagree that it was bound by the provisions of the APA but it argues that the rescission did not require APA notice or opportunity to comment because paragraph 50.13(b) was not a substantive rule. According to the VA, "[t]he M21–1 Manual which Appellant cites is a procedural manual for the use of field personnel and is not intended as a vehicle to notify claimants of their rights." Br. at 16. Subsequently, the VA also argued that the APA did not apply because paragraph 50.13(b) was *"void ab initio."* Memorandum in Support of Appellee's Motion for Review en Banc at 3. Such arguments cannot prevail in the face of the clear requirements of the APA.

## A.

The APA, 5 U.S.C. § 551(4) (1988), defines a rule as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy...." Section 552(a)(1) of the APA mandates that federal agencies publish in the Federal Register

(D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

(E) each amendment, revision, or repeal of the foregoing.

*See also* 38 C.F.R. § 1.551(b)(3) and (4) (1989) (which imposes the same notice requirements on the VA in identical language).

Rules fall into two main categories: substantive or interpretive. "The particular label placed upon it by the [agency] is not necessarily conclusive, for it is the substance of what the [agency] has purported to do and has done which is decisive." *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 416, 62 S.Ct. 1194, 1199–1200, 86 L.Ed. 1563 (1942) (citations omitted.) A rule is substantive in nature when it "has the force of law and narrowly limits administrative action." *Carter v. Cleland,* 643 F.2d 1, 8 (D.C.Cir. 1980); *Guardian Federal Savings & Loan Ass'n v. FSLIC,* 589 F.2d 658, 666–67 (D.C.Cir.1978). In contrast, an interpretive rule, "is one that merely clarifies or explains an existing rule or statute." *Carter,* 643 F.2d at 8; *Guardian Federal Savings & Loan,* 589 F.2d at 664; *see also Pickus v. United States Board of Parole,* 507 F.2d 1107, 1113 (D.C.Cir.1974). "Naturally there are instances when it is difficult to classify a given rule as substantive or interpretive." *Guardian Federal Savings & Loan,* 589 F.2d at 665.

■ Paragraph 50.13(b) did not merely clarify or explain an existing rule or statute. It has "the force of law and narrowly limits administrative action" in that it prescribes what action must be taken in the initial levels of adjudication. Paragraph 50.13(b) regulates the awarding of benefits for hearing defects in a particular instance, *i.e.,* when a change in benefits would result *only* from the implementation of a new rating schedule the old criteria *must* be applied. Paragraph 50.13(b) was more than a mere procedural guideline; it affected a substantive right and its placement in a procedural manual cannot disguise its true nature as a substantive rule. We hold that paragraph 50.13(b) fits well within the statutory (5 U.S.C. § 551(4)) and common law definitions of a substantive rule.

## B.

■ By regulation in effect since 1972 the VA, as a matter of policy, has voluntarily embraced the provisions of the APA:

It is the policy of the Department of Veterans Affairs to afford the public general notice, published in the *Federal Register,* of proposed regulatory development, and an opportunity to participate in the regulatory development in accordance with the provisions of the Administrative Procedure Act (APA). All written comments received will be available for public inspection....

38 C.F.R. § 1.12. (The regulation goes on to permit exceptions to the policy upon the authorization of the Secretary, a circumstance not presented by this case.)

Indeed, the General Counsel of the VA has taken specific note that

the VA has voluntarily adopted the policy of affording the public notice of and an opportunity to comment on proposed regulations in accordance with provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 553.

\*    \*    \*    \*    \*    \*

[T]he types of VA materials that must conform to this procedure.... [are] agency issuances that confer a right, privilege, or benefit, or impose a duty or obligation on VA beneficiaries or other members of the public. Where VA issuances fail to meet the applicable notice and comment requirement, the issuance may be invalid, even though fully within the authority of the [Secretary].

Op.G.C.Mem. (VA July 1, 1987). (This "voluntary" adoption of the APA by the VA was part of the Veterans' Judicial Review Act; *see* 38 U.S.C. § 223 (1988)).

In his appeal to the BVA, the veteran raised the issue of the absence of notice and an opportunity to comment on the rescission of paragraph 50.13(b). Indeed, the Statement of the Case specifically notes that:

> The veteran states that he was not advised that his hearing evaluation could be reduced based on recent criteria for evaluating hearing loss. We agree with this statement and regret that contrary to information he may have previously received, it was possibly [sic] that a new examination and rating criteria could result in an evaluation which is lower than the evaluation previously assigned. However, there is no provision of the law to continue a 30 percent evaluation or to increase his evaluation for his service-connected hearing loss.

R. at 64.

In a statement submitted by the veteran's representative to the Board, it was argued that the VA

> was in error in the dissemination of information ... which led the veteran to believe that these disability evaluations were protected if in effect on the day preceding the effective date of a change in evaluation criteria.

R. at 72.

In its decision, the Board "noted" the argument advanced by the veteran and, like the Chief Benefits Director in the November 23, 1988, memorandum, "acknowledged that such instructions were initially promulgated" by the VA to the veterans community. *Oscar G. Fugere*, loc. no. 919836, at 5 (BVA Aug. 15, 1989). Yet the Board ruled that a higher evaluation was not warranted without discussing, much less resolving, the issue which we believe to be controlling, *i.e.*, whether paragraph 50.13(b) could be summarily deleted without providing the veteran with notice and an opportunity to comment.

The days when benefits or entitlements were considered to be mere privileges are long past. It is now well recognized that "the interest of an individual in continued receipt of [Social Security disability] benefits is a statutorily created 'property' interest protected by the Fifth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The Supreme Court has noted that veterans benefits, entitlement to which is established by service to country at great personal risk, are "akin to Social Security benefits." *Walters v. National Assoc. of Radiation Survivors*, 473 U.S. 305, 333, 105 S.Ct. 3180, 3195–96, 87 L.Ed.2d 220 (1985).

"The Administrative Procedure Act was adopted to provide, *inter alia*, that administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished *ad hoc* determinations." *Morton v. Ruiz*, 415 U.S. 199, 232, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). Even though compliance with APA notice and opportunity to comment requirements in this instance may not have been statutorily required because of the September 1, 1989, effective date of the 1988 law, it was made mandatory by agency regulation and policy. Through 38 C.F.R. §§ 1.12 and 1.551, the VA's notice and opportunity to comment procedures were designed to insure that the veterans community would receive notice of any proposed change that would impact on "right, privilege, or benefit." Op.G.C.Mem. (VA July 1, 1987). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton*, 415 U.S. at 235, 94 S.Ct. at 1074; *see also Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

The notice and opportunity to comment provisions of the APA are particularly important where, as here, the action is one of rescinding an existing rule. There is no question that the APA applies to repeal or rescission; indeed, the requirements may be even stronger in that instance. The Supreme Court has held in an analogous context that "an agency changing its

course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Ins. Co.,* 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). "The value of notice and comment prior to repeal of a final rule is that it ensures that an agency will not undo all that it accomplished through its rulemaking without giving all parties an opportunity to comment on the wisdom of repeal. Such an opportunity was lacking here." *Consumer Energy Council of America v. FERC,* 673 F.2d 425, 446 (D.C.Cir.1982), *cert. denied,* 463 U.S. 1216, 103 S.Ct. 3556, 77 L.Ed.2d 1413 (1983). And here! The unilateral action of the Secretary, taken without any notice to those in appellant's situation, foreclosed any such opportunity.

■ The Court categorically rejects the argument advanced by the Secretary in the memorandum in support of the motion for *en banc* review that the publication of the new rating criteria in the Federal Register and the notification to the veteran that his rating was being decreased somehow satisfied any notice requirement which might exist. Notice of new rating criteria in November 1987 was not notice of the rescission of the manual provision in November 1988. Indeed, notice of the change in criteria, without notice that the rescission of the protective manual provision, was factually useless and legally inadequate. Moreover, a letter to the veteran advising him that his rating had already been decreased is hardly the type of prior notice and opportunity to comment required by the APA.

### C.

■ In his motion for *en banc* review, the Secretary considerably expanded his reliance upon *Richmond.* He argued that paragraph 50.13(b) was *void ab initio* and that therefore *Richmond* prohibited the reinstitution of benefits to this veteran because he was never entitled to them in the first place. We disagree.

The VA Adjudication Procedure Manual, M21–1, is dynamic rather than static. Manual provisions are amended, added and deleted on a continual basis for any number of policy, legal or administrative reasons. Paragraph 50.13(b) appears from the record to have been promulgated as a part of a manual change dated January 3, 1986. Almost two years later, on November 18, 1987, new rating criteria for defective hearing were established and published. Fourteen months after the new criteria were promulgated, and a full three years after paragraph 50.13(b) was inserted into the manual, the VA General Counsel opined that the manual provision "contravenes the [Secretary's] statutory authority" because it "establish[es] dual rating schedules for evaluating hearing impairment." Op.G.C. 11–88 (VA Jan. 30, 1989). Based upon this advisory opinion, the Chief Benefits Director effectively rescinded paragraph 50.13(b) by means of his November 23, 1988, internal memorandum to the Regional Directors.

From these events, the Secretary now argues that the notice and opportunity to comment requirements of the APA were not applicable to the rescission of paragraph 50.13(b) because there was no such paragraph; it was, the Secretary advises us, *"ultra vires"* (Memorandum In Support Of Appellee's Motion For Review *En Banc* at 6) and therefore *"void ab initio." Id.* at 3. Since the manual provision which had protected appellant, as well as those similarly situated, never existed, the argument of the Secretary concludes, "the appellant's attempt to obtain benefits to which he is not entitled, due to erroneous advice appearing in the M21–1 procedures manual, must fail." *Id.* at 8.

Although neither the advisory opinion of the General Counsel nor the memorandum of the Chief Benefits Director expressed the view that paragraph 50.13(b) was *void ab initio,* the Secretary now urges that position upon this Court in his memorandum in support of *en banc* review. While it might be interesting to plumb the depths of the Secretary's commitment to this new view by measuring the quality and quantity

of any effort to recoup benefits paid under the manual provision, such a step is not required to decide this case for "[i]t is clear that no deference is due to an agency 'interpretation' fashioned for the purposes of litigation." *Alaniz v. Office of Personnel Management,* 728 F.2d 1460, 1465 (Fed.Cir. 1984).

The Secretary also argues that the holding in *Richmond* forbids the reinstitution of appellant's 30% rating because it would violate the statutory mandate that there can only be "*a* schedule of ratings." 38 U.S.C. § 355 (1988) (emphasis added). While it is true that the VA General Counsel did voice an internal advisory opinion that the manual provision was beyond the Secretary's authority because it established dual rating schedules, that administrative, intra-agency view was never the subject of notice and opportunity to comment, judicial scrutiny or Congressional action. Moreover, the advisory opinion is not free from doubt for it is not clear that paragraph 50.13(b) exceeds the Secretary's authority. The letter of the Chief Benefits Director created three classes of veterans, two of which were to be given the opportunity to withdraw claims and to continue to receive disability compensation based upon the earlier standard. It was only the appellant's class which was to be denied notice, afforded no options, and rated under the new schedule. The fact that the old schedule was still to be applied to the first two classes did not appear to concern the Chief Benefits Director, or presumably the General Counsel. Indeed, it could be argued, perhaps persuasively, that paragraph 50.-13(b) created separate schedules for veterans in different circumstances, not dual rating schedules, and was well within the authority of the Secretary.

Nevertheless, the correctness of the advisory opinion does not have to be reached to decide this appeal. Like the D.C. Circuit in *Consumer Energy Council of America,* 673 F.2d at 445: "We find that [VA]'s revocation order is invalid because it was issued in violation of the APA, and thus do not reach the issue whether [VA] was authorized to revoke [paragraph 50.13(b)]." The rescission of paragraph 50.13(b) solely upon the basis of the *ex parte,* unpublished advisory opinion of the General Counsel, without affording interested parties and members of the veteran community notice and the opportunity to comment, violated the APA. This is true even though the General Counsel advised that, in his opinion, paragraph 50.13(b) exceeded the authority of the Secretary. *See National Wildlife Federation v. Watt,* 571 F.Supp. 1145, 1156 (D.D.C.1983). "Thus, the APA obligated the Secretary to follow his own regulation until he had published notice of his intention to rescind it, invited comment, put that comment ... on the public record, and published a reasoned and reviewable explanation of his decision to rescind." *Id.,* at 1158.

By unilaterally rescinding the protective manual provision without providing any notice or opportunity to comment to those in the appellant's circumstances, the Secretary acted "without observance of procedure required by law." 38 U.S.C. 4061(a)(3)(D). The APA, 5 U.S.C. § 552(a)(1), and VA regulations, 38 C.F.R. § 1.551(c), specifically provide that:

Except to the extent that a person has actual and timely notice of the terms thereof, no person shall in any manner be required to resort to, or be adversely affected by any matter required to be published by this section in the *Federal Register* and not so published.

Accordingly, the rescission must be set aside.

## CONCLUSION

In deleting manual paragraph 50.13(b) without giving notice or an opportunity to comment, the VA failed to comply with the requirements of 5 U.S.C. §§ 552(a)(1) and 553. Such compliance was required by 38 C.F.R. §§ 1.12 and 1.551(c). Appellant received neither notice nor opportunity either to be heard or to withdraw his claim. We therefore hold that the attempted rescission of manual paragraph 50.13(b) was "without observance of procedure required by law" and is accordingly held "unlawful and set aside" pursuant to 38 U.S.C. § 4061(a)(3)(D). The decision of the Board

of Veterans' Appeals is reversed and the matter is remanded pursuant to 38 U.S.C. § 4052(a) with a direction that appellant's thirty percent rating be reinstated from the effective date of the reduction, March 1, 1989.

*It is so Ordered.*