**Kurtis R. YEOMAN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 95–851.**

United States Court of Veterans Appeals.

Feb. 24, 1997.

Before HOLDAWAY, IVERS, and STEINBERG, Judges.

### ORDER

PER CURIAM.

On January 8, 1997, in a memorandum decision, the Court affirmed the Board of Veterans' Appeals decision on appeal. On January 13, 1997, the appellant, through counsel, filed a motion for reconsideration or, in the alternative, for panel review. The motion also requested review by the full Court, if reconsideration and review by a panel are denied.

Upon consideration of the foregoing and the record on appeal, it is

ORDERED that the appellant's motion for reconsideration is denied. It is further

ORDERED that the appellant's motion for review by a panel is denied. It is further

ORDERED that the appellant's motion for review by the full Court is deemed prematture and is not accepted for filing. See Rule 35(d) of this Court's Rules of Practice and Procedure.

STEINBERG, Judge, dissenting:

I voted to grant the motion for panel review because I believe that the outcome in this case is reasonably debatable and should be decided by a panel.[1] The appellant has raised, through counsel, substantive issues of first impression, including the appropriateness of the use of Iowa state law by the Board of Veterans' Appeals (BVA or Board) in finding that the injuries he sustained in a motor vehicle accident on November 3, 1990, were the result of his own "willful misconduct" under 38 C.F.R. § 3.1(n) (1996).

The Board grounded its July 1995 decision on two separate and independent bases for its finding of willful misconduct: (1) The veteran's decision to drive after what the Board found was a self-induced period of prolonged sleep deprivation, and (2) the veteran's decision to drive while in what the Board found was an impaired state after becoming intoxicated. Record at 14–15. As to *each* independent ground, the Board relied, without notice of such reliance,[2] on Iowa state law. In my view, even if the Court were to remove from consideration, as the Secretary suggests in his brief (Brief at 14, 21–22),[3] the question whether the veteran's consumption of alcohol prior to operating a vehicle constituted willful misconduct, a decision as to whether the case should have been remanded by the Court remains reasonably

---

**1.** *See Bethea v. Derwinski,* 2 Vet.App. 252, 254 (1992) (single-judge decisions are rendered only where there exists a rule of decision which is a binding precedent or a rule of law); *Frankel v. Derwinski,* 1 Vet.App. 23, 25–26 (1990) (summary disposition is appropriate only where the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable"); *see also MacWhorter v. Derwinski,* 2 Vet.App. 655, 656 (1992) ("summary decision by this Court must meet a seven-part test" established by *Frankel* ).

**2.** *See Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990) (holding that compliance with publication and notice-and-comment provisions is required before implementation of substantive rules, or those having the "force of law" and which "narrowly limit administrative action"; and interpre-

tive ·rules, or rules that " 'merely clarif[y] or explain[ ] an existing rule or statute,' " do not require such compliance) (quoting *Carter v. Cleland,* 643 F.2d 1, 8 (D.C.Cir.1980), and *Guardian Federal Savings & Loan Ass'n v. FSLIC,* 589 F.2d 658, 666–67 (D.C.Cir.1978)).

**3.** The Secretary concedes that as to the intoxication grounds "some of [the appellant's] points are well taken, at least as to the *Fugere* argument raised in his brief" but states that "this is not the case to raise them." Brief (Br.) at 14 (footnote omitted). He also states: "Even if the Board's conclusion regarding intoxication might be criticized, it avails Appellant nothing. The Court should affirm the Board's decision based upon the unchallenged finding regarding sleep deprivation." Br. at 21–22.

debatable and involves a matter of first impression.[4]

Given the broad definition of willful misconduct in § 3.1(n), I believe that panel review is needed to clarify the standard the Board may use in determining the type of activity that constitutes willful misconduct (for example, the use of the positive law, in effect at the time of the alleged misconduct, of the jurisdiction where the alleged misconduct occurred)[5] and the type of notice, if any, to which a claimant is entitled as to the applicable standard and as to the basis for choosing that standard.[6]

In *Myore v. Brown,* the Court established that, in order for the Board to justify a willful misconduct determination, it had to "point to the specific conscious wrongdoing or known prohibited action" involved. *Myore,* 9 Vet.App. 498, 503 (1996). The Court there concluded that the Board was required to set forth its bases for concluding that the veteran's death from playing Russian roulette was the result of willful misconduct, noting that there was considerable caselaw that dealt with death by such means and suggested that it was consistent with suicide, which would negate willful misconduct under the Department of Veterans Affairs' regulations, 38 C.F.R. §§ 3.1(n), 3.302 (1996). *Myore,* 9 Vet.App. at 504–05. As *Myore* makes clear, there must be some objective standard for judging the conduct at issue so as to minimize arbitrary decision-making in determining "willful misconduct". The instant case would provide an opportunity for the Court to examine that question further.

Accordingly, with all respect to my colleagues in the majority, I believe that the lack of definitive guidance in our caselaw as to the questions concerning the applicable standard, including its source, regarding determinations of willful misconduct, as well as the requisite notice of that standard, warrant disposition by a panel in this case.

---

4. *See Frankel, supra* note 1.

5. In making technical revisions in 38 C.F.R. § 3.1(n), the Department of Veterans Affairs (VA) recently stated that the phrase "an act involving conscious wrongdoing or known prohibited action" included "actions that are inherently evil or immoral and those that are not inherently immoral but which become so because *their commission is expressly forbidden by positive law.*" 61 Fed.Reg. 56,626 (Nov. 4, 1996) (emphasis added).

6. *Cf. Sutton v. Brown,* 9 Vet.App. 553, 564–69 (1996) (where new evidence or issue not considered by VA regional office (RO) is before BVA, it should advise appellant "that the case will be returned to the [VA]RO for readjudication and issuance of [a Supplemental Statement of the Case (SSOC)] unless the Board receives, within whatever reasonable period of time the Board specifies, a written waiver by the appellant of [certain] procedural rights"); *Austin v. Brown,* 6 Vet.App. 547, 551 (1994) (holding that BVA decision must be set aside where, at least in part, it "rests upon a medical opinion procured by a process that violates both the express holding of *Thurber[ v. Brown,* 5 Vet.App. 119 (1993)], and fair process principle underlying *Thurber"*); *Thurber,* 5 Vet.App. at 126 (holding that before BVA may rely on any evidence developed or obtained by it subsequent to issuance of the most recent SOC or SSOC, BVA must provide claimant with reasonable notice of such evidence and of reliance that Board proposes to place on it and provide reasonable opportunity for claimant to respond to it).