# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-4625

ROBERT J. BRIA, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 1, 2020                    Decided January 15, 2021)

*Ethan F. Maron* and *Ryan J. McClure*, who was on the brief, both of Washington, D.C., for the appellant.

*Timothy G. Joseph*, with whom *William A. Hudson, Jr.*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Anna Whited*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before PIETSCH, GREENBERG, and MEREDITH, *Judges*.

MEREDITH, *Judge*: The appellant, Robert J. Bria, through counsel appeals a March 13, 2019, Board of Veterans' Appeals (Board) decision that denied entitlement to a compensable initial disability rating for hepatitis C and to a disability rating in excess of 10% for that condition from May 20, 2016. Record (R.) at 4-14. The Board also denied entitlement to special monthly compensation (SMC) based on the loss of use of a creative organ. R. at 11. This matter was referred to a panel of the Court to consider the meaning of the phrase "loss of use" in 38 U.S.C. § 1114(k) with respect to creative organs. The facts of this case, however, do not require us to determine in general what may qualify as loss of use. Instead, we hold that the circumstances alleged by the appellant—the use of a condom to prevent the sexual transmission of hepatitis C, resulting in effective infertility—are not the type contemplated by the statute. We therefore affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from August 1972 to August 1974. R. at 73. He was diagnosed with hepatitis C in June 2004. R. at 1666. A VA regional office (RO)

denied his claim for benefits for that condition in February 2005, and he perfected an appeal to the Board. R. at 1856-60, 1901, 1906-07, 1916-17. After several years of activity on the claim, including a Board denial in October 2010, R. at 1581-90, and a Court remand in May 2012, R. at 1492-99, the Board granted the claim in July 2013, R. at 1449-63.

In October 2013, the appellant underwent a VA liver examination to determine the severity of his hepatitis C. R. at 1427-31. The examiner stated that the appellant's "major symptomatic condition" was late stage chronic obstructive pulmonary disease (COPD) and that he was not receiving treatment for hepatitis C. R. at 1427. The appellant denied experiencing "any incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) due to" hepatitis C in the prior 12 months. R. at 1428. Under the heading "Remarks," the examiner wrote: "Active [h]epatitis C without signs of cirrhosis or liver dysfunction." R. at 1430.

The RO implemented the Board's grant of benefits in November 2013, assigning a noncompensable rating for hepatitis C effective August 4, 2004. R. at 1423-26. The appellant, through current counsel, filed a Notice of Disagreement with the assigned rating. R. at 1304-05.

VA medical records dated between March 2014 and December 2015 reflect complaints of nausea and vomiting unrelated to his food intake, R. at 524 (Mar. 2014), 1250 (June 2014), 383-84 (Dec. 2015); declining endurance accompanied by increasing fatigue, R. at 1006 (Oct. 2014); and weight loss, R. at 810 (July 2015), 384 (Dec. 2015). Of note, an October 2014 VA treatment record reflects the appellant's report of increased bloating "that is causing numbness in the epigastric region and pain along the flanks," but the examiner noted that he did "not complain of diarrhea, vomiting, or anorexia." R. at 1028. The following month, the appellant reported to his medical provider that he experienced intermittent bloating and abdominal pain, R. at 948, but the examiner stated that the appellant's pain and bloating was more likely caused by his "recently completed gastric emptying study," the results of which were abnormal, R. at 949. The examiner further noted that the appellant "denie[d] any symptoms relevant to liver disease," including jaundice, edema, ascites, hematemesis, melena, and hepatic encephalopathy. *Id.*

At a VA liver examination in May 2016, the examiner found signs of intermittent fatigue, malaise, and anorexia, R. at 164, but the appellant denied experiencing any incapacitating episodes in the prior 12 months, R. at 165. In October 2016, VA increased the appellant's disability rating to 10%, effective May 20, 2016, the date of the most recent VA examination. R. at 158-62.

Through current counsel, the appellant appealed to the Board. R. at 94-101. In his Substantive Appeal, the appellant argued that the symptoms noted in the May 2016 examination report, which VA determined warranted a higher disability rating, "could not have manifested on the day of [the] examination," and therefore "a compensable evaluation is warranted throughout the period on appeal." R. at 95. He also cited October 2014 and December 2015 VA treatment records to demonstrate that his condition had worsened before May 2016. R. at 95-96. Finally, the appellant requested SMC for loss of use of a creative organ, arguing that his hepatitis C required him to wear a condom during intercourse to protect his partner and that "[c]ondom use effectively precludes procreative sex." R. at 96. In an attached affidavit, the appellant stated that he used a condom to prevent the transmission of hepatitis C and that he had "refrained from unprotected sexual intercourse since June 2013." R. at 98. The appellant's partner also submitted an affidavit stating that they use a condom when engaged in sexual intercourse. R. at 99.

In the March 2019 decision on appeal, the Board denied entitlement to a compensable disability rating for hepatitis C prior to May 20, 2016; to a rating in excess of 10% thereafter; and to SMC based on the loss of use of a creative organ. R. at 4-14. This appeal followed.

## II. ANALYSIS
### A. SMC
#### 1. The Parties' Arguments and the Board's Decision

The appellant first contends that the Board misapplied the law regarding SMC based on the loss of use of a creative organ. Appellant's Brief (Br.) at 5. Specifically, he asserts that the Board erroneously required that his loss of fertility be directly caused by his hepatitis C and did not allow for the possibility of "an additional link in the causal chain, i.e., condom use." *Id.* The Board's decision, he argues, violates *Payne v. Wilkie*, 31 Vet.App. 373 (2019). *Id.* at 7-10. He also argues that 38 U.S.C. § 1114(k) permits the award of SMC for *any* impairment of sexual function that is the result of a service-connected disability. *Id.* at 10-14.

The Secretary counters that the appellant "fails to point [to] any evidence of record that he is infertile, that he has lost a testicle, or that he cannot achieve an erection," and therefore he has failed to carry his burden of demonstrating that the Board misapplied the law. Secretary's Br. at 5. The Secretary urges the Court to adopt for the purposes of section 1114(k) the definition of "loss of use" that the Court established in *Jensen v. Shulkin* for the purposes of 38 U.S.C.

3

§ 2101(a)(2)(B)(i), regarding the loss of use of both lower extremities: "a deprivation of the ability to avail oneself of the anatomical region in question." 29 Vet.App. 66, 78 (2017); Secretary's Br. at 8-9. Under that definition, the Secretary argues, the Board properly denied entitlement to SMC because the appellant's hepatitis C "has not deprived him of the *ability* to have procreative sex," Secretary's Br. at 9; rather, the appellant can simply "remove the condom and have procreative sex, thereby removing any potential impairment to his fertility," *id.*

With respect to the appellant's request for SMC, the Board stated:

SMC is available for loss of use of a creative organ. In most circumstances, [it] is applied to situations like erectile dysfunction, loss of one or both testicles, or loss of one or both ovaries. The [appellant] does not argue, and there is no evidence, that he suffers from erectile dysfunction as a result of his service-connected hepatitis C, that he is unable to achieve an erection, or that he has been rendered infertile as a result of his service-connected disability. While the Board acknowledges the contention that the [appellant] must use a condom during intercourse, there is no evidence or argument that, if he did not, [] he would be unable to conceive a child as a result of his service-connected hepatitis C. Absent such a showing, the use of a condom alone does not rise to the level of loss or loss of use of a creative organ. SMC is therefore not warranted.

R. at 11 (citation omitted).

### 2. Statutory Interpretation of Section 1114(k)

Congress has provided that SMC is payable to a veteran who, as the result of a service-connected disability, has suffered the "loss of use" of a "creative organ[]." 38 U.S.C. § 1114(k). In our recent decision in *Payne*, the Court held that, "[b]ecause Congress did not explicitly include . . . limitations [on qualifying service-connected disabilities] when drafting section 1114(k), the Court presumes that it did not intend to limit potential entitlement to SMC(k) only to veterans with specific service-connected disabilities." 31 Vet.App. at 384. The Court also held that "the plain text of section 1114(k) does not . . . preclude a theory of entitlement [to SMC(k)] based on a multi-link causal chain between the service-connected disability and the anatomical loss or loss of use of one or more creative organs." *Id.* at 385. Therefore, the causal chain on which the appellant's claim is based (i.e., his service-connected hepatitis C causes him to use a condom which results in effective infertility) may not be foreclosed *if* it results in loss of use of a creative organ.[1] That, in

---

[1] Given the Court's holding that the appellant has not demonstrated error in the Board's conclusion that he has not suffered the loss of use of a creative organ, we need not decide whether use of a condom may serve as an intermediate step in the causal chain between a service-connected disability and such a loss of use.

these circumstances, turns on whether section 1114 requires a disability of the creative organ to establish loss of use, a question the Court has not had occasion to consider.[2] Accordingly, we begin, as always, with the statutory language. *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see Williams v. Taylor*, 529 U.S. 420, 431 (2000).

"The statute's plain meaning is derived from its text and its structure." *McGee*, 511 F.3d at 1356; *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007). In assessing the language of a statute, courts review the overall statutory scheme "'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.'" *Roper*, 20 Vet.App. at 178 (quoting 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46:06 (6th ed. 2000)).

The first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. The interpretation of a statute is a question of law that the Court reviews de novo, without deference to the Board's interpretation. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

---

[2] In *Jensen*, the Court considered the meaning of the phrase "loss[] or loss of use" as it appears in 38 U.S.C. § 2101(a)(2)(B)(i) and 38 C.F.R. § 3.809(b)(1) (pertaining to specially adapted housing), 29 Vet.App. at 68, for disabilities "due to the loss, or loss of use, of both lower extremities such as to preclude locomotion without the aid of braces, crutches, canes, or a wheelchair," 38 U.S.C. § 2101(a)(2)(B)(i). The Court held that "loss of use" means "a deprivation of the ability to avail oneself of the anatomical region in question," there, the lower extremity. *Jensen*, 29 Vet.App. at 78. Because the Court in *Jensen* considered the meaning of "loss of use" in a different context, its definition is informative but not controlling, particularly in light of our colleagues' statement in that case that "loss of use" is "a general term, one that can readily accept additional specificity in various circumstances," explaining that "[a]djacent modifiers and, in the case of SMC, regulatory efforts[,] create that specificity." *Id.*

For several reasons, we conclude that the "text and . . . structure" of section 1114(k), *McGee*, 511 F.3d at 1356, make clear that the ability of the creative organ to function must be diminished in order to constitute a "loss of use of . . . [a] creative organ[]."[3] 38 U.S.C. § 1114(k). Therefore, the Board did not err in finding that a personal choice to use a condom, even when done with the intention of preventing the spread of disease, does not alone result in loss of use of a creative organ.

First, section 1114 is part of chapter 11 of title 38, U.S. Code, which is titled "Compensation for Service-Connected Disability or Death." Subchapter II begins with section 1110, which provides that, "[f]or disability," compensation will be paid "as provided in this subchapter" when certain conditions are satisfied. 38 U.S.C. § 1110. Section 1114 of that subchapter in turn provides that, "[f]or the purposes of section 1110"—i.e., for the purposes of paying compensation for disability—the listed rates will apply. Subsection (k) then sets forth the rate of compensation where a veteran, "as the result of service-connected disability, has suffered the anatomical loss or loss of use *of one or more creative organs*." 38 U.S.C. § 1114(k) (emphasis added). Notably, that subsection later provides that, "in the event the veteran has suffered one or more of *the disabilities heretofore specified* in this subsection," a higher rate of SMC is warranted. *Id.* (emphasis added). In that regard, although subsection (k) references generically a "service-connected disability" as the beginning of the causal chain, no specific service-connected conditions are thereafter listed. *See Payne*, 31 Vet.App. at 384 (noting that subsection 1114(k) "does not specify the types of service-connected disabilities" that may result in compensation under that subsection). Accordingly, the phrase "disabilities heretofore specified" must refer to the specific conditions enumerated in subsection (k), which includes "loss of use of . . . [a] creative organ[]."[4] The placement of section 1114 and the wording of subsection (k) thus clearly indicate that SMC(k)

---

[3] Nothing in our opinion suggests that the cause of the diminishment must be physical rather than psychological.

[4] The Court notes that, in April 2000, VA's Office of General Counsel (OGC) considered whether VA could, via rulemaking, compensate service-connected mastectomies under section 1114(k). VA Gen. Couns. Prec. 2-00 (Apr. 3, 2000). The OGC concluded that "VA may not by rulemaking designate additional *injuries or conditions* for which it will pay k-rate SMC, beyond those *specified* in section 1114(k), even if it finds that the loss involved is comparable to the losses involved in the conditions for which Congress has authorized k-rate SMC." *Id.* at 2 (emphases added).

compensates for *disabilities* of some kind and, as relevant here, that it must be a disability "of . . . [a] creative organ[]."  38 U.S.C. § 1114(k).

A "disability" for the purposes of chapter 11 requires "functional impairment," which impacts the "'ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life.'"  *Saunders v. Wilkie*, 886 F.3d 1356, 1363 (Fed. Cir. 2018) (quoting 38 C.F.R. § 4.10 (2017)); *see* 38 U.S.C. § 1110.  At a minimum, then, the plain language of section 1114(k) conveys that the ability of the creative organ to function must be diminished in order to warrant compensation.  *See Wait v. Wilkie*, 33 Vet.App. 8, 15 (2020).  This conclusion is further buttressed by the other circumstances Congress specifically listed in section 1114 as warranting SMC, which are conditions affecting specific parts of a veteran's body or of his or her psyche.  *See* 38 U.S.C. § 1114(k) (including—in addition to the anatomical loss or loss of use of a creative organ—the anatomical loss or loss of use of one foot, one hand, both buttocks; blindness in one eye; "complete organic aphonia with constant inability to communicate by speech"; deafness of both ears; the anatomical loss of 25% or more of tissue from a single breast or both breasts in combination due to mastectomy; and treatment of breast tissue with radiation[5]), (*l*) (providing SMC for anatomical loss or loss of use of both feet or one hand and one foot, as well as blindness in both eyes), (m) (providing SMC for the anatomical loss or loss of use of both hands, or of both legs with factors preventing natural knee action with prostheses in place; of one arm and one leg with factors preventing natural elbow and knee action with prostheses in place; and blindness in both eyes with only light perception), (n) (providing SMC for the anatomical loss or loss of use of both arms with factors preventing natural elbow

---

[5] The Court notes that, when Congress ultimately proposed adding mastectomies to the list of disabilities compensated under section 1114(k), VA's Under Secretary for Benefits offered the following:

> Special monthly compensation is currently authorized for certain anatomical losses or losses of use for which the rating schedule, which is based solely on impairment of earning capacity, is considered inadequate for compensation purposes.  The statute recognizes that the loss of a hand or foot, for example, or loss of a creative organ, *involves loss of bodily integrity which may negatively affect self-image and precipitate considerable emotional distress*.

> The service-connected radical or modified-radical mastectomies covered by [the proposed legislation] involve *loss of bodily integrity and associated emotional trauma to a degree that is at least comparable to the removal of a single testicle*, for example, for which special monthly compensation is currently payable regardless of its effect on a veteran's procreative ability and regardless of whether the veteran is still of procreative age.  As a matter of simple equity, these mastectomies warrant equal compensation for the veterans who undergo them.

S. REP. NO. 106-397, at 55 (2000) (emphases added).

action with prostheses in place; the anatomical loss of both legs with factors that prevent the use of prosthetic appliances; the anatomical loss of one arm and one leg with factors that prevent the use of prosthetic appliances; the anatomical loss of both eyes; and blindness without light perception in both eyes).

Additionally, the structure of section 1114 indicates that more severe disabilities are compensated at a higher level of SMC. *See* 38 U.S.C. § 1114(k)-(n); *Breniser v. Shinseki*, 25 Vet.App. 64, 68-69 (2011). Tellingly, under subsection (k), *loss of use* of a creative organ is compensated at the same level as *anatomical loss* of a creative organ. This suggests not only that Congress contemplated that the loss of use of a creative organ that warrants SMC(k) would be comparable in severity to the anatomical loss of a creative organ,[6] but also that the focus of subsection (k) is on the level of function, or absence of function, of the creative organ.

In sum, we find that the text and structure of section 1114(k) require that, to establish a "loss of use of . . . [a] creative organ[]," there must be diminished function of the creative organ. 38 U.S.C. § 1114(k). To the extent that, as discussed below, this resolves the current dispute, "that is the end of the matter." *Chevron*, 467 U.S. at 842.

### *3. Application*

As noted above, the appellant contends that compensation under section 1114(k) is warranted because "service-connected [h]epatitis C causes him to refrain from sex without condoms, and condom use precludes procreative intercourse."[7] Appellant's Br. at 10. Alternatively, he avers that, even if condom use does not constitute a loss of fertility, he would nevertheless be entitled to SMC(k) because reliance on condoms due to hepatitis C is itself "an

---

[6] In that regard, the Court notes that the *VA Adjudication Procedures Manual* directs an adjudicator as follows: "When a VA examiner finds that there is [erectile dysfunction] or other sexual dysfunction, SMC(k) is established even though . . . the [v]eteran had a vasectomy prior to the development of the [loss of use] of a creative organ, *as vasectomies may be reversible while* [*loss of use*] *is not*." VA ADJUDICATION PROCEDURES MANUAL, M21-1 (M21-1), pt. III, subpt. iv, ch. 4, § I.3.b (emphasis added).

[7] The Court will not address the appellant's arguments first raised in his reply brief, *see* Reply Br. at 1-5, and reiterated at oral argument, *see* Oral Argument at 8:27-9:01, 12:32-13:15, 15:20-:30, 17:07-:39, http://www.uscourts.cavc.gov/oral_arguments_audio.php, that his creative organ is impaired because it is capable of transmitting disease. *See Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review argument first raised in appellant's reply brief), *aff'd sub nom. Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[I]mproper or late presentation of an issue or argument . . . ordinarily should not be considered."); *see also Untalan v. Nicholson*, 20 Vet.App. 467, 471 (2006); *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990). The Court notes, however, that although he was represented by current counsel below, the appellant does not contend or point to evidence reflecting that he raised this theory of entitlement before the Agency, nor does he contend that it was reasonably raised by the record. *See* R. at 96 (June 2017 Substantive Appeal, filed through current counsel, contending that "[c]ondom use effectively precludes procreative sex").

8

impairment of normal sexual function." *Id.* at 11.  The Secretary, on the other hand, maintains that SMC(k) is not warranted here because the appellant does not suffer from a "medical impairment, injury, or disease to [his] creative organ." Secretary's Br. at 9; *see id*. at 5 ("[T]here is no evidence that there is anything wrong with [the a]ppellant's creative organs.").  Specifically, he contends that the appellant "is capable of having [] sex without a condom and procreating," *id.* at 8; his "hepatitis C has not deprived him of the ability to have procreative sex," *id.* at 9; and, "[c]onsistent with the Board's finding, [he] can remove the condom and have procreative sex, thereby removing any potential impairment to his fertility," *id.* (citing R. at 11).

Although the appellant appears to contend that use of a condom constitutes a change in his sexual "function," the essence of his argument is that SMC(k) may compensate a veteran for *a change in behavior* purportedly resulting from a service-connected disability.  *See, e.g.*, Reply Br. at 4 ("[The appellant] retains the physical capacity for unprotected intercourse, but chooses to refrain from unprotected intercourse.").  However, from the above discussion, it is clear that Congress intended SMC(k) to compensate for, generally, *physical or mental* impairment resulting from a service-connected disability and, specifically with respect to loss of use, for the diminishment of the functional ability of a creative organ that is comparably as severe as anatomical loss.  In that regard, the appellant does not challenge the Board's findings that "there is no evidence[] that he suffers from erectile dysfunction . . . . , that he is unable to achieve an erection, or that he has been rendered infertile."  R. at 11.  Nor did he in his principal brief argue or point to evidence reflecting that hepatitis C results in any other type of diminishment in the ability of his creative organs to function or that his condition results in any mental impairment, for example, loss of libido.[8]  *See* R. at 11.  Because the plain language of section 1114(k) makes clear that SMC(k) is not warranted in the absence of any impairment of his creative organ, the Court cannot conclude that the appellant has demonstrated that the Board erred in finding that "use of a condom alone does not rise to the level of loss or loss of use of a creative organ."  R. at 11.  Accordingly, the Court need not address the appellant's remaining arguments regarding his entitlement to SMC(k).

---

[8] We note that the M21-1 reflects that SMC(k) is available for the diagnosed conditions of impotence and loss of libido, among other conditions.  *See* M21-1, pt. III, subpt. iv, ch. 4, § I.3.b.

B. Disability Ratings

The appellant argues that the Board provided inadequate reasons or bases for denying entitlement to a compensable disability rating for hepatitis C prior to May 20, 2016, and to a rating in excess of 10% thereafter because the Board did not fully address the arguments he raised below and relied on the May 2016 VA examination, which he avers is inadequate, to deny higher disability ratings. Appellant's Br. at 16-20. The Secretary disputes these arguments and urges the Court to affirm the Board's decision. Secretary's Br. at 12-19. Notably, the Secretary asks the Court to decline to consider the appellant's argument regarding the adequacy of the May 2016 VA medical examination because the appellant did not raise that challenge below, despite being represented by current counsel. *Id.* at 16-17.

The Board is tasked with determining the proper disability rating in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (stating that "appellate tribunals are not appropriate fora for initial fact finding"); *see also* 38 U.S.C. § 7261(c) ("In no event shall findings of fact made by the Secretary or the [Board] be subject to trial de novo by the Court."). The Board's determination of the proper disability rating is a finding of fact that the Court reviews under the "clearly erroneous" standard of review. *See* 38 U.S.C. § 7261(a)(4); *Buckley v. West*, 12 Vet.App. 76, 81 (1998). A finding of fact is clearly erroneous when the Court, after reviewing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). As with any material issue of fact or law, the Board must provide a statement of the reasons or bases for its determination "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.

*1. Adequacy of the May 2016 VA Medical Examination*

To begin, the Court will not address the appellant's argument, raised for the first time to the Court, that "the May 2016 VA examination report is insufficient for the Board to reach a fully informed evaluation" and should have been returned. Appellant's Br. at 19. There is a longstanding recognition of "the importance of issue exhaustion with respect to administrative tribunals" because "'orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts.'" *Scott v. McDonald*, 789 F.3d 1375, 1377 (Fed.

10

Cir. 2015) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). Within the context of the VA system, the Court must apply a balancing test to determine whether the doctrine of issue preclusion should be invoked: "'The test is whether the interests of the individual weigh heavily against the institutional interests the doctrine exists to serve.'" *Id.* at 1378 (quoting *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000)). However, the Court is not required "to . . . address procedural arguments when the [appellant] fails to raise them before the Board." *Id.* at 1381.

The appellant has been represented by current counsel since at least August 2014. *See* R. at 1304-05. In his Substantive Appeal, the appellant through counsel offered arguments related to the proper disability ratings for his condition and to SMC, but he did not challenge the adequacy of the May 2016 VA medical examination. *See* R. at 95-96. Because the appellant failed to raise this issue below, thus depriving the Agency of the opportunity for correction and failing to raise an issue reviewable by this Court, *see Scott*, 789 F.3d at 1377, the Court, applying the balancing test of *Maggitt*, will not exercise its discretion to review the issue raised for the first time here. *See Dickens v. McDonald*, 814 F.3d 1359, 1361-62 (Fed. Cir. 2016) (affirming the Court's invocation of the doctrine of issue exhaustion where the appellant failed to raise a procedural argument to the Board).

### 2. Reasons or Bases

The appellant's hepatitis C is evaluated under 38 C.F.R. § 4.114, Diagnostic Code 7354. Under that diagnostic code, a noncompensable rating is warranted where the condition is nonsymptomatic, while a 10% rating is warranted where it results in "[i]ntermittent fatigue, malaise, and anorexia[;] or[] incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) having a total duration of at least one week, but less than two weeks, during the past 12-month period." 38 C.F.R. § 4.114, Diagnostic Code 7354 (2020). A 20% rating requires "[d]aily fatigue, malaise, and anorexia (without weight loss or hepatomegaly), requiring dietary restriction or continuous medication[;] or[] incapacitating episodes . . . having a total duration of at least two weeks, but less than four weeks, during the past 12-month period." *Id.* To warrant a 40% rating, the claimant's hepatitis C must result in "[d]aily fatigue, malaise, and anorexia, with minor weight loss and hepatomegaly[;] or[] incapacitating episodes . . . having a total duration of at least four weeks, but less than six weeks, during the past 12-month period." *Id.* A 60% rating is warranted where the condition

results in "[d]aily fatigue, malaise, and anorexia, with substantial weight loss (or other indication of malnutrition), and hepatomegaly[;] or[] incapacitating episodes . . . having a total duration of at least six weeks during the past 12-month period, but not occurring constantly." *Id.* Finally, a 100% rating is warranted where the condition results in "[n]ear-constant debilitating symptoms (such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain)." *Id.* An "incapacitating episode" is "a period of acute signs and symptoms severe enough to require bed rest and treatment by a physician." *Id.* at Note 2.

The appellant contends that the Board failed to fully address an argument that he raised in his Substantive Appeal, namely, that "the May 2016 VA examination report is itself evidence that the symptoms of fatigue, malaise, and anorexia [on which his 10% rating is based] pre-dated May 20, 2016." Appellant's Br. at 17; *see* R. at 95. The appellant argues that the examiner's conclusion is necessarily based on his review of records showing symptoms that warrant a 10% rating earlier than the date of the examination. Appellant's Br. at 17.

In the decision on appeal, the Board acknowledged the appellant's argument and specifically reviewed the October 2014 and December 2015 treatment records that the appellant identified in his Substantive Appeal. R. at 8. The Board found, however, that "[t]he evidence of record . . . simply does not support a finding that the [appellant's] increase in disability was factually ascertainable prior to the assigned effective date of the stage of May 20, 2016." *Id.* The Board explained that the appellant's VA treatment records "primarily show treatment for symptomatology due to [his COPD], gastroesophageal reflux disease (GERD)[,] and swallowing disorder," and did not show "that he exhibited the symptomatology necessary for an increased rating" for hepatitis C. *Id.* In that regard, the Board summarized numerous treatment records and concluded that none of them indicated that the examiners attributed his reported symptoms to hepatitis C. R. at 8-9. The Board therefore found no evidence to support increasing the appellant's disability rating for either period on appeal. R. at 9-10.

The Court concludes that the appellant has not carried his burden of demonstrating prejudicial error in this regard. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error). His argument consists of summaries of the May 2016 examination report, the argument in his Substantive

Appeal, and the Board's decision, Appellant's Br. at 16-17; a statement that the Board should have addressed "why the VA examiner's report is not itself evidence that the symptoms pre-date May 20, 2016," *id.* at 17; and an assertion that he was prejudiced by the Board's error because his ability to understand the Board's decision is hindered, *id.* Missing from his argument, however, is reference to any evidence showing that the symptoms he points to are attributable to hepatitis C or, assuming such evidence exists, an explanation of how those symptoms satisfy the requirements for a higher disability rating.

The appellant next argues that the Board's determination that the symptoms he reported throughout the appeal period were related to his COPD or GERD is an impermissible medical conclusion. Appellant's Br. at 18-20; *see Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991) (finding that the Board is prohibited from "provid[ing] [its] own medical judgment in the guise of a Board opinion"), *overruled on other grounds by Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998). Contrary to the appellant's argument, however, the Board did not reach a medical conclusion. Instead, the Board reviewed the medical treatment records and summarized their contents, including whether the medical provider attributed the appellant's reported symptoms to hepatitis C. *See* R. at 8-9. The Board then weighed that evidence against the appellant's assertions that his symptoms were more severe throughout the appeal period than reflected in the assigned disability ratings. R. at 10. It is the Board's responsibility to weigh the evidence in the first instance, and the Court may only overturn the Board's conclusion in that regard if the appellant demonstrates that it was clearly erroneous. *See Washington v. Nicholson*, 19 Vet.App. 362, 369 (2005); *Owens v. Brown*, 7 Vet.App. 429, 433 (1995). The appellant has not carried that burden here.

The Court acknowledges the appellant's citation to a March 2014 VA internal medicine note reflecting that his abdominal pain was "[l]ikely from cirrhosis and known hemangioma in [the] liver." R. at 521; Appellant's Br. at 19. The Court also notes that the Board did not expressly discuss this record. *See* R. at 7-10. The appellant, however, has not demonstrated that the Board's failure to explicitly account for this evidence is prejudicial to him, again arguing only that the Board's inadequate reasons or bases hinder his ability to understand the decision. Appellant's Br. at 20; *see* 38 U.S.C. § 7261(b)(2); *Sanders*, 556 U.S. at 409.

The appellant raises no other challenges to the Board's decision regarding the proper disability rating for hepatitis C for the periods on appeal. The Court will therefore affirm that portion of the Board decision.

## III. CONCLUSION

After consideration of the parties' pleadings, a review of the record, and hearing oral argument, the Board's March 13, 2019, decision is AFFIRMED.